J-A28007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROSEANNE M. SIMEONE | |
| Appellee | No. 813 EDA 2015 |

Appeal from the Order March 18, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001102-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED DECEMBER 29, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Monroe County Court of Common Pleas, which granted in part and denied in part the Commonwealth's notices of intent to introduce evidence of prior bad acts against Appellee, Roseanne M. Simeone.  We affirm in part and reverse in part.

The relevant facts and procedural history of this case are as follows. On November 5, 2013, police filed a criminal complaint against Ms. Simeone for crimes which took place between September 17, 2013 and October 7, 2013.  In the affidavit of probable cause, Detective John Bohrman related the following facts.  On September 17, 2013, Victim called police to report harassment by Ms. Simeone, Victim's ex-girlfriend.  Victim admitted he had an affair with Ms. Simeone.  When Victim ended the relationship, he said

that Ms. Simeone became obsessed with him and refused to accept that the relationship was over. Ms. Simeone told Victim's wife about the affair and showed up at Victim's residence to convince Victim to continue their relationship. When police confronted Ms. Simeone about her appearance at Victim's residence, Ms. Simeone claimed she went to Victim's house to confront him because he had raped her. Ms. Simeone subsequently went to the police station and filed a formal report of the alleged rape. Ms. Simeone described the rape to police in great detail, which Ms. Simeone alleged had occurred on or about September 10, 2013. Ms. Simeone insisted Victim threatened to kill or hurt her if she told anyone he had raped her.

Nearly every night after Ms. Simeone filed the report accusing Victim of rape, Ms. Simeone contacted police to report that someone had vandalized the road in front of her house with spray paint. Ms. Simeone told police she believed Victim was the perpetrator of each act of vandalism. In total, Ms. Simeone reported fourteen (14) separate acts of vandalism implicating Victim as the perpetrator.[1] Meanwhile, Victim also reported acts of vandalism at his residence and vacation home.

On September 18, 2013, Ms. Simeone obtained a temporary protection from abuse ("PFA") order against Victim. Following a PFA hearing on

_____

[1] Ms. Simeone alleged the perpetrator spray-painted vulgar messages including but not limited to: "Die Jew Lover," "I'm Gonna Kill U," and "Ur Chicken 4 Running." In one instance, Ms. Simeone also reported that the perpetrator had burned a fire on her lawn.

October 7, 2013, the court dismissed the temporary PFA order. Ms. Simeone called police that night and reported that, upon her return home, she discovered the words "U Lost Bitch" spray-painted in the road in front of her house. Ms. Simeone said she photographed the vandalism with her iPhone; Ms. Simeone e-mailed the picture to police. Ms. Simeone informed police she hid in a ditch later that evening in case the perpetrator returned, and Ms. Simeone eventually saw someone who looked like Victim drive by her house. Ms. Simeone said she took a picture of the car and captured the license plate. Ms. Simeone sent this picture to police as well, and police confirmed that the license plate in the picture matched Victim's registration.

Upon examination of Ms. Simeone's pictures, police also discovered Ms. Simeone had taken the picture of the spray-painted language at 3:45 p.m. on October 7, 2013. Regarding the picture of the license plate, however, police determined Ms. Simeone had edited that photo. Ms. Simeone denied editing the picture. Consequently, police obtained a search warrant for Ms. Simeone's iPhone on October 17, 2013. After police obtained the search warrant, Ms. Simeone did not report any further acts of vandalism.

When police executed the search warrant on Ms. Simeone's iPhone, police discovered numerous text messages from Ms. Simeone to Victim occurring after the alleged rape, which were inconsistent with messages between an alleged rape victim and her alleged rapist. For example, the

messages showed Ms. Simeone pleading with Victim to stop ignoring her and to spend more time with her, and showed an effort by Ms. Simeone to continue her relationship with Victim. Additionally, a closer examination of the picture of the license plate Ms. Simeone had sent to police revealed Ms. Simeone had edited an earlier photograph taken on November 27, 2012.

On October 19, 2013, police interviewed Elizabeth O'Brien, one of Ms. Simeone's best friends. Ms. O'Brien told police she knew Ms. Simeone was responsible for some of the spray painting committed at Victim's vacation home and on the road in front of Ms. Simeone's house. Ms. O'Brien admitted she participated in some of the spray painting at Victim's house with Ms. Simeone and was present when Ms. Simeone did some of the spray painting by herself.

The Commonwealth initially charged Ms. Simeone with two counts of false reports to law enforcement authorities (one count involving her allegation of rape and one count involving her allegation of vandalism), and one count each of tampering with or fabricating physical evidence and criminal mischief.[2] The Commonwealth subsequently amended the criminal information, with leave of court, adding thirteen (13) counts of false reports to law enforcement authorities for the additional, separate allegations of vandalism to or near Ms. Simeone's property.

_____

[2] 18 Pa.C.S.A. §§ 4906(a); 4910(2); 3304(a)(4), respectively.

On January 16, 2015, the Commonwealth filed notice of its intent to introduce evidence of prior bad acts pursuant to Pa.R.E. 404(b). The Commonwealth sought to introduce the following evidence:

a. On or about August 4, 2009, [Ms. Simeone] vandalized ex-paramour S.M.'s vehicle with green spray paint shortly after the dissolution of the relationship;

b. On or about July 7, 2010 and again on July 12, 2010, [Ms. Simeone] flattened tires on ex-paramour J.V.'s vehicle shortly after the dissolution of the relationship;

c. On or about June 20, 2011, again on June 21, 2011, and a third time on July 8, 2011, [Ms. Simeone] threw rocks at vehicles belonging to ex-paramour D.J., twice breaking windows on the vehicle and once causing a dent in a bumper and on June 20, 2011[, Ms. Simeone] also vandalized one vehicle with spray paint;

d. On or about July 29, 2012, following an argument with paramour T.H., [Ms. Simeone] told her paramour she knew how to get him in trouble and then reported a domestic assault to police;

e. Between April 2013 and October 2013, [Ms. Simeone], on at least (6) occasions did vandalize [Victim's] property in Green Township, Pike County by spray painting messages such as "Kill All Jews" and "You're an Asshole";

f. On or about November 18, 2013, shortly after a break up with paramour J.S., [Ms. Simeone] appeared at her ex-paramour's residence uninvited and when he would not let her inside the residence, [Ms. Simeone] threatened to call and eventually did call the police to report a domestic assault.

(Commonwealth's Notice of Intent to Introduce Pa.R.E. 404(b) Evidence, filed January 16, 2015, at 2-3; R.R. at 17a-18a). The Commonwealth alleged, *inter alia*, the evidence sought to be admitted is relevant to

- 5 -

establish a common plan or scheme. The Commonwealth also maintained the probative value of its proposed evidence outweighs any prejudice. Ms. Simeone responded on January 27, 2015, opposing admission of the evidence. Ms. Simeone claimed the evidence sought to be admitted was "plainly inadmissible" prior bad acts evidence, which is irrelevant and "totally outweighed by undue prejudice" to Ms. Simeone.

On January 29, 2015, the Commonwealth amended its notice of intent to introduce evidence of prior bad acts. The Commonwealth indicated it no longer intended to produce evidence of Ms. Simeone's acts of vandalism against J.V. on July 7, 2010 and July 12, 2010.[3] Additionally, the Commonwealth listed two more incidents of prior bad acts it sought to introduce, which occurred on September 11, 2009 and September 13, 2009, when Ms. Simeone conspired with others to vandalize her ex-paramour, C.O.'s, vehicle with spray paint on both occasions. Ms. Simeone pled guilty to conspiracy to commit criminal mischief in relation to both events.[4] (Commonwealth's Amended Notice of Intent to Introduce Pa.R.E. 404(b) Evidence, filed January 29, 2015, at 2; R.R. at 27a). Ms. Simeone responded on February 3, 2015, opposing admission of the evidence for the same reasons advanced in her earlier response.

_____

[3] J.V. informed police he did not want any involvement in the case.

[4] Ms. Simeone states on appeal that her convictions were for harassment.

On February 27, 2015, the court held a pre-trial hearing regarding admissibility of the Commonwealth's proposed evidence.[5] The Commonwealth recited its proposed evidence as detailed in its notice and amended notice of intent to introduce evidence of prior bad acts.[6] The Commonwealth indicated each ex-paramour described in the notice or amended notice (except for J.V. in relation to the withdrawn incidents of vandalism) would be available and willing to testify at trial. The Commonwealth claimed its proposed evidence establishes, *inter alia*, a common plan or scheme in which Ms. Simeone vandalizes the property of, or makes false reports against, ex-paramours as acts of retribution following dissolution of their relationships. The Commonwealth insisted all events occurred continuously between 2009 and 2013, which is a relatively short timeframe. Ms. Simeone responded that the majority of the alleged incidents did not result in convictions, the incidents are irrelevant to the charges against her, and even if relevant, all proposed evidence is highly prejudicial.

On March 18, 2015, the court granted in part and denied in part the

_____

[5] The court also heard argument regarding two of the Commonwealth's motions *in limine*, the rulings on which are not at issue in this appeal.

[6] With respect to the incident of Ms. Simeone's false report against J.S. on November 18, 2013, the Commonwealth added that a responding police officer had observed Ms. Simeone inflict injuries on herself in the area of her body where she alleged J.S. had committed the assault against her.

Commonwealth's notice and amended notice to introduce evidence of prior bad acts. Specifically, the court permitted the Commonwealth to introduce evidence of Ms. Simeone's vandalism to Victim's property between April 2013 and October 2013. Nevertheless, the court prohibited the Commonwealth from introducing all other proposed evidence involving any other ex-paramour as irrelevant, not indicative of a common plan or scheme, or outweighed by the danger of unfair prejudice. The Commonwealth timely filed a notice of appeal on March 19, 2015, pursuant to Pa.R.A.P. 311(d).[7] On April 9, 2015, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which the Commonwealth timely filed on April 15, 2015.

The Commonwealth raises one issue for our review:

WHETHER THE [TRIAL] COURT ABUSED ITS DISCRETION IN DENYING THE ADMISSION AT TRIAL OF THE MAJORITY OF THE COMMONWEALTH'S PROFFERED EVIDENCE PURSUANT TO PENNSYLVANIA RULE OF EVIDENCE 404(B) AFTER ERRONEOUSLY CONCLUDING THAT THE EVIDENCE WAS IRRELEVANT, NOT SIMILAR ENOUGH, OFFERED TO SHOW CRIMINAL PROPENSITY, WOULD BE MORE PREJUDICIAL THAN PROBATIVE, THE COMMONWEALTH'S NEED FOR THE EVIDENCE WAS SLIGHT IN LIGHT OF OTHER EVIDENCE, AND/OR THE EVIDENCE WAS NOT OTHERWISE OFFERED FOR A PERMITTED USE UNDER

---

[7] *See* Pa.R.A.P. 311(d) (stating in criminal cases, Commonwealth may take appeal as of right from order that does not end entire case where Commonwealth certifies in notice of appeal that order appealed from will terminate or substantially handicap prosecution of case).

RULE 404(B)?

(Commonwealth's Brief at 4).

The Commonwealth argues Ms. Simeone formulated a scheme to exact revenge on Victim for his termination of their relationship by accusing him of rape and vandalism. The Commonwealth asserts these acts are strikingly similar to the incidents described in its notice and amended notice of intent to introduce evidence of prior bad acts. The Commonwealth claims the manner of each offense is the same in that they involve Ms. Simeone's attack on an ex-paramour's property or character at the end of a relationship. The Commonwealth maintains Ms. Simeone employed similar "weapons" in each incident by using spray paint in the majority of the vandalism events or her words to lodge false reports to law enforcement. The Commonwealth insists Ms. Simeone committed each act for the same purpose—to seek public retribution against an ex-paramour following dissolution of the relationship. The Commonwealth highlights that all victims were Ms. Simeone's ex-paramours. The Commonwealth also avers the timeframe of Ms. Simeone's actions was continuous from 2009 to 2013, and demonstrates a clear pattern at the end of her relationships. The Commonwealth emphasizes that Ms. Simeone vandalized the property of S.M., C.O., and D.J., and that Ms. Simeone threatened T.H. and J.S. with false reports of domestic assaults. The Commonwealth avers Victim suffered similar false accusations of rape and vandalism by Ms. Simeone. The

Commonwealth submits the primary difference between this case and the prior incidents of vandalism involving her ex-paramours is that Ms. Simeone vandalized her ex-paramours' property at their respective homes; here, Ms. Simeone vandalized her own property and accused Victim of those actions. The Commonwealth submits the similarities between its proposed evidence and the facts of the present case reveal a common plan or scheme admissible under Pa.R.E. 404(b).[8]

Additionally, the Commonwealth argues the need for its proposed evidence is great. The Commonwealth asserts its case is largely circumstantial because the Commonwealth does not have receipts for spray paint Ms. Simeone purchased or video surveillance confirming Ms. Simeone bought spray paint. The Commonwealth claims it has only one eyewitness (Ms. O'Brien) to **one** act of Ms. Simeone spray painting her own property. The Commonwealth maintains its case has serious hurdles before a jury due to the "he said/she said" nature of the case, the obvious question of why Ms. Simeone would vandalize her own property, and Ms. Simeone's insistence that Victim raped her. The Commonwealth contends it does not offer the proposed evidence solely to demonstrate Ms. Simeone's propensity to commit crimes, but to show her common plan or scheme and her identity as

_____

[8] Because the Commonwealth no longer seeks to introduce evidence that Ms. Simeone also vandalized J.V.'s property, we do not consider the events related to J.V.

the culprit of the offenses charged. The Commonwealth emphasizes the probative value of its proposed evidence is strong, and Ms. Simeone offers only a blanket allegation of prejudice. The Commonwealth suggests the court can issue a cautionary instruction to the jury to consider its proposed evidence only for its intended purpose. The Commonwealth concludes the trial court abused its discretion by denying in large part the Commonwealth's notice and amended notice to introduce evidence of prior bad acts, and this Court must reverse. We agree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Drumheller*, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting *Commonwealth v. Stallworth*, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa.Super. 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007).

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404.  Character Evidence; Crimes or Other Acts**

\*     \*     \*

**(b)  Crimes, Wrongs or Other Acts.**

*(1)  Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2)  Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

\*    \*    \*

Pa.R.E. 404(b)(1)-(2).  "[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes."  **Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1283 (Pa.Super. 2004) (*en banc*).  Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character."  **Id.**  Specifically, evidence of other crimes or bad acts is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident.  **Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501 (2005), *cert. denied*, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006).  When offered for a legitimate purpose, evidence of prior crimes or bad acts is admissible if its probative value outweighs its potential for unfair prejudice.  **Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657 (2014), *cert. denied*, \_\_\_\_ U.S. \_\_\_\_, 135 S.Ct. 164,

190 L.Ed.2d 118 (2014).

This Court recently explained:

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. Tyson*, 119 A.3d 353, 358-59 (Pa.Super. 2015) (*en banc*) (quoting *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa.Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008)). *See also Commonwealth v. Weakley*, 972 A.2d 1182 (Pa.Super. 2009), *appeal denied*, 604 Pa. 696, 986 A.2d 150 (2009) (explaining in comparing methods and circumstances of separate crimes, court must necessarily look

for similarities in number of factors, including: (1) manner in which crimes were committed; (2) weapons used; (3) ostensible purpose of crime; (4) location; and (5) type of victims).

Significantly, "[t]he common scheme exception does not require that the two scenarios be identical in **every** respect." ***Tyson, supra*** at 360 n.3 (emphasis in original) (reversing trial court's exclusion of defendant's prior rape conviction in case charging defendant with rape, sexual assault, indecent assault, and aggravated indecent assault; evidence of prior rape conviction was admissible under common plan or scheme exception where facts of prior conviction and facts of current case showed defendant was invited guest in each victim's home, was cognizant of each victim's compromised state, and had vaginal intercourse with each victim while victim was unconscious; differences between incidents concerned details which were not essential to alleged common scheme). Further, although "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." ***Id.*** at 359 (quoting ***Commonwealth v. Aikens***, 990 A.2d 1181, 1185 (Pa.Super. 2010), *appeal denied*, 607 Pa. 694, 4 A.3d 157 (2010)).

Evidence of relevant prior crimes or bad acts is admissible "if the probative value of the evidence outweighs its potential for unfair prejudice."

*Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa.Super. 2014) (*en banc*).

"'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Dillon*, 592 Pa. 351, 366, 925 A.2d 131, 141 (2007) (quoting Pa.R.E. 403, *Comment*).

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial.

*Tyson, supra* at 360 (quoting *Dillon, supra* at 367, 925 A.2d at 141). Where the Commonwealth seeks to introduce evidence of prior bad acts or other crimes in a case based largely upon circumstantial evidence, admission of such evidence is particularly important. *Weakley, supra* at 1191.

"Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence. … Jurors are presumed to follow the trial court's instructions." *Hairston, supra* at 160, 84 A.3d at 666 (holding extraneous offense of arson was admissible under Rule 404(b) as *res gestae* evidence in prosecution for murder; trial court's instruction on how arson evidence should be considered minimized likelihood that arson evidence would inflame jury or cause it to convict defendant on improper basis). *See also*

- 15 -

*Commonwealth v. Arrington*, 624 Pa. 506, 86 A.3d 831 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 479, 190 L.Ed.2d 363 (2014) (holding evidence of defendant's prior acts of violence and intimidation against three other girlfriends was admissible under common plan or scheme exception in defendant's trial for murder of most recent girlfriend; evidence concerning defendant's treatment of other girlfriends demonstrated repeated efforts by defendant to preserve intimate relationships through harassment, intimidation, and physical violence culminating in use of deadly weapon against murder victim; in each incident, defendant monitored his girlfriend's daily activities, resorted to violence when she wanted to end relationship or interacted with other men, inflicted head or neck injuries with his fist, handgun, or edged weapon, and harmed or threatened to harm members of each girlfriend's family or male acquaintances who defendant viewed as romantic rivals; evidence was relevant, reliable, and probative of defendant's guilt; evidence of defendant's prior bad acts also played important role where charges in current case were based largely on circumstantial evidence; although details of prior bad acts were undoubtedly harmful to defense, those events were significant because they proved defendant was capable of using deadly force to prevent woman from leaving him; these considerations, coupled with court's cautionary instructions at trial, established that probative value of prior bad acts evidence exceeded prejudicial impact).

Instantly, the Commonwealth charged Ms. Simeone with one count of false reports to law enforcement authorities in connection with her allegation of rape against Victim, fourteen (14) counts of false reports to law enforcement authorities in connection with each act of vandalism Ms. Simeone reported and accused Victim of perpetrating, one count of tampering with or fabricating physical evidence in connection with Ms. Simeone's submission of photographs of the alleged vandalism and perpetrator to police, and one count of criminal mischief in connection with Ms. Simeone's vandalism to her property and the road in front of her home.

In its notice and amended notice of intent to introduce evidence of prior bad acts, the Commonwealth sought to introduce the following evidence: (1) on or about August 4, 2009, Ms. Simeone vandalized ex-paramour S.M.'s vehicle with green spray paint shortly after the dissolution of the relationship; (2) on or about June 20, 2011, again on June 21, 2011, and a third time on July 8, 2011, Ms. Simeone threw rocks at vehicles belonging to ex-paramour D.J., twice breaking windows on the vehicle and once causing a dent in a bumper and on June 20, 2011, Ms. Simeone also vandalized one vehicle with spray paint; (3) on or about July 29, 2012, following an argument with paramour T.H., Ms. Simeone told her paramour she knew how to get him in trouble and then reported a domestic assault to police; (4) between April 2013 and October 2013, Ms. Simeone, on at least six occasions, vandalized Victim's property in Green Township, Pike County

by spray painting messages such as "Kill All Jews" and "You're an Asshole"; (5) on or about November 18, 2013, shortly after a break up with paramour J.S., Ms. Simeone appeared at her ex-paramour's residence uninvited and when he would not let her inside the residence, Ms. Simeone threatened to call and eventually did call the police to report a domestic assault; and (6) on September 11, 2009 and September 13, 2009, Ms. Simeone conspired with others to vandalize her ex-paramour, C.O.'s, vehicle with spray paint on both occasions.

Following a pre-trial hearing on February 27, 2015, the court granted in part and denied in part the Commonwealth's requested relief on March 18, 2015. Specifically, the court permitted the Commonwealth to introduce evidence of Ms. Simeone's vandalism to Victim's property between April 2013 and October 2013. The court prohibited the Commonwealth from introducing all other proposed evidence involving any other ex-paramour as irrelevant, not indicative of a common plan or scheme, or outweighed by the danger of unfair prejudice.

Nevertheless, the record reveals the following factual similarities between the present case and Ms. Simeone's prior bad acts. In each case, the victim of Ms. Simeone's actions was an ex-paramour. Following dissolution of each relationship, Ms. Simeone vandalized the ex-paramour's property (S.M., D.J., Victim, and C.O.) or accused her ex-paramour of committing some type of assault on her (T.H., J.S., and now Victim). Ms.

Simeone used spray paint as her primary "weapon" for destruction of the ex-paramour's property in the majority of the incidents involving Ms. Simeone's vandalism. Similarly, the present case involves thirteen (out of fourteen) allegations by Ms. Simeone of vandalism to the road in front of her property using spray paint. With respect to the incidents involving Ms. Simeone's accusations against her ex-paramours, Ms. Simeone's "weapon" was her words publicly attacking the ex-paramour's reputation in order to support criminal charges. Likewise, the present case involves fifteen allegations by Ms. Simeone accusing Victim of criminal acts (one allegation of rape and fourteen allegations of vandalism). The ostensible purpose of Ms. Simeone's prior acts was to exact revenge on her ex-paramours after they ended their relationships with her. In the present case, Victim reported to police that Ms. Simeone's actions resulted from her apparent dissatisfaction with and refusal to accept Victim's termination of their relationship. Thus, the nature of the victims of Ms. Simeone's prior bad acts, the manner in which Ms. Simeone committed those acts, the "weapons" she used to commit those acts, and the ostensible purpose of Ms. Simeone's prior bad acts are nearly identical to the present case. ***See Arrington, supra***; ***Tyson, supra***; ***Weakley, supra***. The details and surrounding circumstances of each incident reveal criminal conduct that is sufficiently distinctive to establish Ms. Simeone engaged in a common plan or scheme in which she takes revenge on her ex-paramours at the end of a relationship. ***See Arrington, supra***;

*Tyson, supra*; *G.D.M., Sr., supra*. Thus, the Commonwealth's proposed evidence was relevant to demonstrate a common plan or scheme under Rule 404.[9] *See* Pa.R.E. 404(b)(2).

Additionally, evidence of Ms. Simeone's prior bad acts is not too remote to negate its probative value. Ms. Simeone vandalized S.M.'s vehicle in August 2009, conspired with others to vandalize C.O.'s vehicle on two occasions in September 2009, vandalized D.J.'s vehicles on three occasions in June and July 2011, accused T.H. of domestic assault in July 2012, vandalized Victim's property on six occasions between April 2013 and October 2013, and accused J.S. of domestic assault in November 2013.[10]

_____

[9] To the extent differences exist between Ms. Simeone's prior bad acts and the conduct charged, these details are not essential to the common scheme. For example, Ms. Simeone threw rocks at D.J.'s vehicle on two occasions, whereas in the majority of the other vandalism acts she used spray paint. The common scheme, however, does not require the use of spray paint to vandalize an ex-paramour's property. The salient facts of each case are that Ms. Simeone took revenge on an ex-paramour by destroying his property or his reputation. The method in which Ms. Simeone committed that destruction is not dispositive, as the exception does not require the scenarios to be identical in **every** respect. *See Tyson, supra*. Likewise, the fact that Ms. Simeone vandalized the property of her ex-paramours in the prior incidents and vandalized her own property in this case, does not negate the common scheme exception. *See id.* To the contrary, Ms. Simeone's destruction of her own property and subsequent accusation of blame on Victim reveals an escalation of her prior bad acts because it implicates Victim in criminal activity causing damage to his reputation (and perhaps livelihood) instead of just his property. *See Arrington, supra*.

[10] In its amended notice of intent to introduce evidence of prior bad acts, the Commonwealth withdrew its proffered evidence of Ms. Simeone's vandalism of J.V.'s property that took place on two occasions in July 2010.

Consequently, Ms. Simeone's actions have been continuous from 2009 to 2013; any lapse in time is certainly not "excessive." **See Tyson, supra**. Moreover, the similarities of the prior bad acts and the facts of the current case render any remoteness even less important. **See id.**; **Aikens, supra**.

Further, the probative value of the Commonwealth's proposed evidence outweighs its potential for unfair prejudice. Ms. Simeone's prior bad acts should not be shielded from the factfinder merely because they are harmful to Ms. Simeone; the question is whether evidence of her prior bad acts would be **unfairly** prejudicial. **See Dillon, supra**; **Tyson, supra**. The substantial similarities between the prior bad acts and the facts of this case give the Commonwealth's proposed evidence considerable probative value. Ms. Simeone's prior bad acts are particularly important in this case because the Commonwealth's evidence against Ms. Simeone is largely circumstantial. The Commonwealth lacks direct evidence to show Ms. Simeone purchased spray paint to deface her own property and lacks eyewitnesses to the majority of the crimes charged. The Commonwealth contends it has only **one** eyewitness who will testify Ms. Simeone was the actual perpetrator of only **one** of the fourteen acts of vandalism on or near Ms. Simeone's property. Regarding the false reports charge involving Ms. Simeone's allegation of rape against Victim, the record confirms that Ms. Simeone still insists Victim raped her, suggesting a "he said/she said" scenario will play out at trial. **See Weakley, supra**.

Moreover, to alleviate the potential for unfair prejudice, the court can issue a cautionary instruction to the jury regarding the limited purpose of the evidence and clarify that the jury cannot treat the prior bad acts as proof of Ms. Simeone's bad character or criminal tendencies. **See Hairston, supra**. Jurors are presumed to follow the trial court's instructions. **See id.** Given the substantial similarities between the current crimes and Ms. Simeone's prior bad acts, and the importance of the common scheme evidence to the Commonwealth's case, we conclude the trial court erred when it found the Commonwealth's proposed evidence relative to ex-paramours other than Victim was inadmissible under the common scheme exception to Rule 404. Accordingly, we affirm the order granting admission of the Commonwealth's evidence concerning Ms. Simeone's acts of vandalism on Victim's property; we reverse the court's order in all other respects.

Order affirmed in part, reversed in part. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/29/2015</u>