J. S63042/17

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA    :     IN THE SUPERIOR COURT OF
                                           :             PENNSYLVANIA
                    v.                      :
                                           :
SHIRL D. PEYATT,                     :           No. 655 WDA 2017
                                           :
                 Appellant       :


Appeal from the Judgment of Sentence, January 25, 2017,
in the Court of Common Pleas of Forest County
Criminal Division at No. CP-27-CR-0000053-2015


BEFORE: BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:       FILED NOVEMBER 28, 2017

Shirl D. Peyatt appeals from the January 25, 2017 judgment of sentence entered in the Court of Common Pleas of Forest County following his conviction in a jury trial of aggravated indecent assault of a child; aggravated indecent assault -- complainant less than 13 years of age; unlawful contact with a minor (sexual offenses); intimidation of witnesses or victims to refrain from reporting; corruption of minors (sexual offenses); and indecent assault -- complainant less than 13 years of age.[1] The trial court sentenced appellant to an aggregate term of imprisonment of 144 months to 288 months. We affirm.

---

[1] 18 Pa.C.S.A. §§ 3125(b), 3125(a)(7), 6318(a)(1), 4952(a)(1), 6301(a)(1)(ii), and 3126(a)(7), respectively

The record reflects that on July 13, 2015, the female victim, who was then 11 years old, and her then 12-year-old stepbrother, Q.P., visited appellant and his wife, who are Q.P.'s maternal grandparents. That night, the victim and Q.P. slept in appellant's living room. The victim slept on a loveseat, and Q.P. slept on a sofa. The victim testified that she woke up around 2:00 a.m. because she felt her pants being pulled down and someone "touching" her. (Notes of testimony, 11/2-3/16 at 108.) She stated that she knew what time it was because she checked the time on her tablet, which was sitting beside her. (Id.) After waking up, she pulled her pants back up. She did not see who was touching her, and she went back to sleep. (Id. at 109.)

The victim then testified that she woke up once more because she "felt someone pulling [her] pants down again." (Id. at 109.) She stated that she was fully awake and saw and felt appellant touching her "inside [her] clothing" on her "crotch" and that appellant "stuck his finger inside of it" and that "it hurt." (Id. at 110-111.) The victim then stated that she "pulled [her] pants up" and "went to the bathroom and got dressed." (Id. at 111.)

The victim further testified that when she went to retrieve her phone, she saw appellant taking her phone. She then encountered appellant again in the living room, at which time appellant asked the victim "if he could lick down there." (Id.) The victim told him "no." (Id.) The victim stated that

appellant then "came up to [her] and handed [her] $20 and told [her] not to tell anyone" or he "would hurt [the victim's] brother." (Id. at 112, 116.)

The record reflects that the only witness called by the Commonwealth to testify at trial as to appellant's prior bad acts was T.B.[2] The trial court summarized T.B.'s testimony as follows:

> T.B. testified that [a]ppellant was her uncle by marriage. She and her brother use [sic] to visit [a]ppellant's home during the summer recess from school. The last visit occurred when she was 11 or 12 years old. T.B. testified at the in camera hearing that she was born in 1993, therefore the last visit would have been in 2004 or 2005. She would be accompanied by her brother who was two years older than her. During the last visit, T.B. and her brother were alone with [a]ppellant and his wife and were under their care and supervision. After playing outside all day T.B. and her brother went to bed in [a]ppellant's living room. T.B. slept on the floor and her brother slept on a couch. T.B. was awoken by someone touching her. Her pants were down and a coffee table that she was sleeping next to had been moved. She saw [a]ppellant walking out of [the] room. Her brother was still asleep on the couch.

Trial court opinion, 5/23/17 at 3.

---

[2] The record reflects that appellant's first trial ended in a mistrial. The trial court ordered a mistrial sua sponte because the prior bad acts testimony of child witness D.D. diverged from the offer of proof that the Commonwealth submitted to the trial court and that the trial court relied upon in permitting D.D. to testify. (Trial court opinion, 5/23/17 at 2-3.)

The record further reflects that the trial court permitted T.B. to testify at appellant's first trial. As a result of the mistrial, however, T.B. did not testify at appellant's first trial. Prior to permitting T.B. to testify at appellant's second trial, the trial court conducted an in camera hearing to ensure the admissibility of T.B.'s prior bad acts testimony.

As stated, a jury convicted appellant of the crimes set forth above. Following imposition of sentence, appellant filed a timely post-sentence motion, which the trial court denied. Appellant then filed a timely notice of appeal to this court. Subsequently, the trial court ordered appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied. Thereafter, the trial court filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:

> 1. Was the denial of [appellant's] right to be present at an evidentiary hearing pursuant to 42 Pa.C.S.[A.] § 5985.1 [(a)dmissibility of certain statements[)] an error requiring reversal of his conviction[?]
>
> 2. Was the admission of testimony of prior bad acts at a jury trial, testimony describing prior acts of sexual misconduct attributed to [appellant], error requiring reversal of his conviction[?]
>
> 3. Should the conviction of [appellant] on count 3, 18 Pa.C.S.[A.] § 6318 [(u)nlawful contact with minor[)] be vacated because there was insufficient evidence of an act which could fairly be viewed as one of intentional contact[?]

Appellant's brief at 13 (italics and quotation marks omitted).

Appellant first complains that he had a right to be present during those parts of the evidentiary hearing conducted under the Tender Years Hearsay

Act ("TYHA"), 42 Pa.C.S.A. § 5985.1,[3] in which the trial court heard testimony from third parties, and because he was not present for this third-party testimony, his convictions should be reversed. Appellant concedes that he had no right to be present at the TYHA hearing when the victim testified. (Appellant's brief at 26.)

The TYHA provides, in relevant part, that if the trial court "[h]ear[s] the testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim[,]" . . .in connection with making a finding that "the child . . . is unavailable as a witness," "the defendant, the attorney for the defendant and the attorney for the Commonwealth have the right to be present." 42 Pa.C.S.A. § 5985.1(a)(2)(i), (b)(2) & (c)(2). As such, a criminal defendant has no statutory right to be present at a TYHA hearing during third-party testimony when the victim is available as a witness at trial and subject to cross-examination. Here, the victim was available as a witness at trial and subject to cross-examination, as were the third parties that testified at the TYHA hearing. Therefore, appellant's substantive right "to be confronted with the witnesses against him," as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution was not violated by his

---

[3] The TYHA creates an exception to the hearsay rule for young victims and witnesses by providing for the admissibility of certain out-of-court statements to third parties that otherwise may be considered hearsay. See 42 Pa.C.S.A. § 5985.1; see also Commonwealth v. Golphin, 161 A.3d 1009, 1023 (Pa.Super. 2017).

absence during third-party testimony at the TYHA hearing.[4]  Consequently, this claim lacks merit.

Appellant next complains that the trial court abused its discretion by admitting the testimony of T.B. regarding appellant's prior bad acts because the Commonwealth did not allege that the evidence was "necessary" and because the trial court failed to balance the probative value of the evidence against its prejudicial impact.  (Appellant's brief at 40, 45.)

"On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited.  A trial court's decision will not be reversed absent a clear abuse of discretion."  Commonwealth v. Aikens, 990 A.2d 1181, 1184 (Pa.Super. 2010) (citations omitted).  "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."  Id. at 1184-1185 (citations omitted).

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1).  However, evidence of prior bad

---

[4] We note that appellant claims that the Commonwealth bore responsibility for transporting appellant to the TYHA hearing under local rules of court. (Appellant's brief at 24-26.)  To the extent that appellant requests this court to address that issue on appeal, we decline to do so because appellant failed to raise the issue in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal and, therefore, waived the issue on appeal.  See Pa.R.A.P. 1925(b)(4)(vii) (issues not included in the Rule 1925(b) statement are waived).

acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2).[5] In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

Id. at 1185 (citations to case law omitted).

---

5      Rule 404. Character Evidence; Crimes or Other Acts

. . . .

(b) Crimes, Wrongs or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

. . . .

Pa.R.E. 404(b)(1)-(2).

In order for prior bad acts to be introduced under this particular exception, a close factual nexus must exist to sufficiently demonstrate the connective relevance of the prior bad acts to the criminal charge at issue. Commonwealth v. Sitler, 144 A.3d 156, 163-164 (en banc) (Pa.Super. 2016) (citations omitted).

Here, the record reflects that the trial court permitted the Commonwealth to introduce evidence of prior bad acts via T.B.'s testimony for the purpose of showing motive or a common scheme, plan, or design. (Trial court opinion, 5/23/17 at 6; see also notes of testimony, 11/2-3/16 at 446.) The trial court set forth the close factual nexus that sufficiently demonstrated the connective relevance of the 2004 or 2005 assault of T.B. and the assault that is the subject of this appeal, as follows:

> 1. T.B. was 11 or 12 at the time she was sexually assaulted by [a]ppellant. The victim was 11 years of age when she was sexually assaulted by [a]ppellant.
>
> 2. Both T.B. and the victim were related to [a]ppellant by marriage. [] Appellant was T.B.'s uncle by marriage and the victim's step-grandfather.
>
> 3. T.B. and the victim were both spending the night at the home of [a]ppellant without the presence of their parents and were under the care, custody and control of [a]ppellant and his wife.
>
> 4. The assaults both occurred in the living room of the same home of [a]ppellant.

5. The assaults both occurred at nighttime while the girls were sleeping in the living room.

6. Both victims were awoken by being assaulted by [a]ppellant who pulled their pants down and touched the victims.

7. [] Appellant's wife was present in the home on both occasions.

8. Both assaults occurred while a juvenile male was also asleep on a couch in the living room.

The unique pattern and circumstances of the sexual assaults distinguish these two incidents from what might be called more typical or routine child sexual abuse fact patterns. In both cases, [a]ppellant took advantage of a sleeping eleven or twelve year old female, entrusted to his care for the night, while the victims were sleeping in his living room. The nature of the sexual assaults, pulling down the child's pants and touching them with his fingers, was also similar. The fact that a juvenile male relative was asleep on a couch in the same room is not some insignificant, coincidental detail that is common to most cases of sexual assault. It points to the fact that [a]ppellant is not opposed to sexually assaulting a young girl even with the risk of another juvenile sleeping in the same room awakening to see the assault. The remoteness in time was greatly outweighed by these significant similarities. Taken with all of the other similarities with respect to geographic location, time, characteristics of the victims and nature of the attacks, this evidence clearly was properly admitted.

Trial court opinion, 5/23/17 at 4-5 (citation omitted).

Here, appellant does not complain that his assault on T.B. lacked a close factual nexus that was incapable of demonstrating the connective

relevance between that assault and the assault that is the subject of this appeal. Rather, appellant first complains that the trial court abused its discretion when it admitted T.B.'s prior bad acts testimony because that evidence was not "necessary," as the case against appellant was more than circumstantial. (Appellant's brief at 40, 45.) In support of his seeming argument that prior bad acts testimony cannot be admitted unless the Commonwealth's case against a criminal defendant is purely circumstantial, appellant cites to Commonwealth v. Hicks, 156 A.3d 1114 (Pa. 2017). In Hicks, however, our supreme court merely reiterated that prior bad acts evidence is "highly probative when the Commonwealth's case is otherwise based largely on circumstantial evidence." Id. at 1128 (citations omitted). Therefore, appellant's contention that prior bad acts evidence is only admissible in a criminal prosecution based principally on circumstantial evidence entirely fails to reflect the law of this Commonwealth and must fail.

In his second and final complaint regarding the trial court's admission of prior bad acts evidence, appellant claims that he is entitled to a reversal of his convictions because the trial court failed to balance the probative value of T.B.'s testimony against its prejudicial effect. (Appellant's brief at 45-46.) The record, however, belies appellant's contention.

The record demonstrates that prior to admitting T.B.'s testimony, the trial court conducted an in camera hearing. (Notes of testimony, 11/2-3/16 at 203-221.) Following T.B.'s examination at that hearing, the trial court

noted that T.B.'s testimony was consistent with the Commonwealth's offer of proof. (Id. at 219.) The trial court also summarized the stark similarities between T.B.'s testimony and the testimony that had already been given by the victim. (Id. at 220.) Although the trial court admitted T.B.'s prior bad acts testimony, it stated at the hearing that it would "give the appropriate limiting instruction to the jurors before [sending] them to the jury room." (Id. at 221.) Prior to deliberations, the trial court gave the following limiting instructions with respect to the prior bad acts evidence:

> You heard evidence tending to prove that [appellant] may have committed another offense for which [appellant] is not on trial. I am speaking of the testimony of [T.B.]
>
> This evidence is before you for a very limited purpose. That is for the purpose of showing motive or a common scheme, plan or design. This evidence must not be considered by you in any other way than for the purpose I just stated.
>
> You must not regard this evidence as showing [appellant] as a person of bad character or criminal tendencies from which you might be inclined to infer guilt.
>
> If you find [appellant] guilty, it must be because you are convinced by the evidence that he committed the crimes charged and not because you believe his is a wicked person or has committed another offense.

Notes of testimony, 11/2-3/16 at 446.

These instructions, to which appellant took no exceptions, demonstrate that the trial court balanced the probative value of T.B.'s testimony against

its prejudicial effect because the trial court appropriately instructed the jury as to the limited and narrow purpose for which T.B.'s bad acts evidence was admitted and, therefore, restricted any unfair prejudicial effect. See Hicks, 156 A.3d at 1129 (reiterating that trial court should consider comprehensive limiting instructions when balancing probative value and prejudicial effect and provision of such limiting instructions weighs in favor of upholding admission of other bad acts evidence (citations omitted)). Therefore, this claim lacks merit.

Appellant finally challenges the sufficiency of the evidence to sustain his conviction of unlawful contact with a minor.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Pappas, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted).

The Crimes Code defines "unlawful contact with a minor," in relevant part, as follows:

§ 6318.  Unlawful contact with a minor.

(a) Offense defined.--A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).  [These offenses include:  rape, statutory sexual assault, involuntary deviate sexual intercourse, sexual assault, institutional sexual assault, aggravated indecent assault, indecent assault, and indecent exposure.]

18 Pa.C.S.A. § 6318(a)(1).  The statute defines "contact" as "direct or indirect contact or communication by any means, method or device, including contact or communication in person."  18 Pa.C.S.A. § 6318.

Here, appellant contends that the in-person contact that appellant had with the victim falls outside of the parameters of the statute's intent because appellant did not engage the victim in conversation so as to entice her to be

- 13 -

in appellant's home at the time of the assault and because appellant asked the victim whether he could "lick down there" after he completed the physical assault. Appellant is gravely mistaken. This court has explained that:

> "unlawful contact with a minor," . . . is best understood as "unlawful communication with a minor." By its plain terms, the statute prohibits the act of communicating with a minor for enumerated sexual purposes. The communication may take place in person, on the telephone, via a computer, or in other ways. 18 Pa.C.S.A. § 6318(c). Because the crime is complete as of the moment of communication, it is not necessary for the defendant to take any further affirmative steps to have physical contact with the minor, such as driving to a hotel.

Commonwealth v. Rose, 960 A.2d 149, 152-153 (Pa.Super. 2008) (emphasis omitted; citations omitted).

In this case, the victim testified that after appellant sexually assaulted her, he then approached her and "asked [her] if he could lick down there." (Notes of testimony, 11/2-3/16 at 111.) On the basis of the victim's testimony then, the jury could conclude that appellant completed the crime of unlawful contact with a minor when he asked the victim if he could "lick down there" because no affirmative steps to have such physical contact with the victim was required. Therefore, viewing this evidence in the light most favorable to the Commonwealth as verdict winner, it was sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/28/2017