**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Ronald AIKENS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 5, 2009.

Filed March 4, 2010.

Emily B. Cherniack, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, BOWES, and FITZGERALD *, JJ.

OPINION BY BOWES, J.:

¶ 1 Ronald Aikens appeals from the October 2, 2008 order denying him PCRA relief. We affirm.

¶ 2 On August 28, 2003, a jury convicted Appellant of corruption of a minor, endangering the welfare of a child, and indecent assault. The victim, T.S., is Appellant's biological daughter. T.S. had no contact with Appellant until she was ten years old when she located him to form a relationship. After she started visiting Appellant, he began to kiss her on the mouth and massage her body, which made her uncomfortable, but she disregarded these actions in order to continue to see Appellant. Appellant stopped seeing T.S. when she was eleven years old, but their relationship resumed when she turned thirteen. The trial court described the events underlying Appellant's convictions herein:

> On the evening of March 17, 2001, when T.S. was 14, she and defendant went out to eat together and returned late to his apartment. As they entered the apartment, defendant's phone rang; caller ID showed that it was T.S.'s mother, probably calling to see why T.S. [, who was not supposed to stay the night with Ap-

---

* Former Justice specially assigned to the Superior Court.

pellant,] was not home yet. Defendant did not answer the phone. Instead, he went into his bedroom, leaving T.S. alone in the living room. Shortly thereafter, T.S. went through defendant's bedroom on her way to the bathroom. When she came out of the bathroom, defendant, still fully clothed, asked her to lie down on the bed and watch television with him. She complied. When she looked up at the television, however, she saw that defendant was watching a pornographic film. She did not want to watch "naked people having intercourse," so she turned her head. Defendant started massaging her shoulders and rubbing her thighs, buttocks and crotch area. She asked him what was wrong with him, but he did not answer. She got up and went back to the bathroom. When she came out, he was lying in bed in his underwear massaging his exposed penis. T.S. was confused and returned to the bed, but this time she turned her back towards defendant. He tried to remove her belt from her pants but she grabbed his hand to stop him, again asking, "What is wrong with you?" Defendant began grinding his penis against her buttocks and made "funny noises." As he groped and satisfied himself against his daughter, he told her how soft her skin was. T.S. knew this was wrong and said, "You should be with my mother like this, and not me."

Trial Court Opinion, 8/28/08, at 2–3 (footnote and citations to record omitted). At that point, T.S. fled into the living room. When Appellant took T.S. home the following morning, he warned her not to tell anyone about the incident. Distraught, T.S. informed a friend and her church deaconess, Sonja Burrus, about Appellant's actions after extracting promises from them not to tell anyone about the assault. Ms. Burrus kept her promise but urged T.S. to speak with the church pastor.

¶ 3 On Friday, March 23, 2001, T.S. was despondent and spoke to her aunt and cousin about what had happened to her. T.S.'s aunt immediately telephoned the girl's mother and police. T.S.'s mother confronted Appellant on the telephone, and Appellant did not deny that he molested the girl. He maintained the contact was consensual.

¶ 4 At trial, the Commonwealth presented testimony from V.B., Appellant's thirty-two-year-old daughter with another woman. V.B., who was not acquainted with T.S., came forward after she heard about the victim's accusations. V.B. testified that when she was fifteen years old, she spent the night at Appellant's apartment occasionally, and on one of those times, Appellant watched a pornographic movie and then raped her.

¶ 5 The case proceeded to sentencing, where the Commonwealth presented evidence that Appellant had two prior convictions for statutory rape. Appellant was sentenced to three and one-half to seven years imprisonment followed by four years probation. On appeal, Appellant maintained, *inter alia*, that the trial court erred in permitting V.B.'s testimony because it involved prohibited prior bad acts evidence. We concluded that Appellant had waived that claim since he had failed to order the transcription of the hearing where the trial court had ruled on the Commonwealth's pretrial motion *in limine* asking for permission to present V.B.'s testimony. *Commonwealth v. Aikens*, 888 A.2d 2 (Pa.Super.2005) (unpublished memorandum). In addition, we briefly noted that the pretrial ruling was consistent with our decision in *Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877 (1996). *Id.* at 5 n. 3.

■ ¶ 6 Appellant filed a timely PCRA petition. Counsel was appointed and filed

an amended petition. This appeal followed the denial of PCRA relief. Appellant maintains, as he did with the PCRA court, that appellate counsel was ineffective for failing to preserve his evidentiary challenge to the admission of V.B.'s testimony.[1] Initially, we observe herein that while we did conclude during the direct appeal that the issue was waived due to the absence of a transcript, we also noted that the ruling on the motion *in limine* was correct. Thus, as the Commonwealth observes, the question raised on appeal has been finally litigated and cannot form the basis for PCRA relief. *Commonwealth v. Reed,* 601 Pa. 257, 971 A.2d 1216 (2009).

¶ 7 In *Reed,* during his direct appeal, the defendant raised an issue as to whether prior bad acts evidence had been properly admitted at his trial. The direct appeal panel of the Superior Court ruled both that the prior-bad-acts claim was waived and that, alternatively, it was meritless. We also explained why the contention lacked validity. During the subsequent PCRA proceeding, our Supreme Court extrapolated on the effect of the alternative rulings rendered by the direct appeal panel of this Court:

> This Court has explained that "[w]here a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of *obiter dictum.*" *Commonwealth v. Swing,* 409 Pa. 241, 245, 186 A.2d 24, 26 (1962). In the instant case, while the Superior Court in *Reed I* determined that Reed's claims were waived, it also determined that even if the claims had not been waived, they were without merit, and the court explained the basis for its conclusions. Thus, the Superior Court's holding in *Reed I* that Reed's claim re-

garding the admission of prior bad acts testimony was meritless was a valid holding that constitutes the law of the case, *see Commonwealth v. Starr,* 541 Pa. 564, 578, 664 A.2d 1326, 1333 (1995) (holding that the coordinate jurisdiction rule and all its attendant meanings and limitations expressed in previous case law would be assumed into law of the case doctrine)[.]

*Commonwealth v. Reed,* 601 Pa. 257, 971 A.2d 1216, 1220 (2009) (footnote omitted).

¶ 8 Herein, while our analysis of the merits was rather brief, we concluded during Appellant's direct appeal that the trial court's admission of the prior bad acts testimony was consistent with controlling case authority. Comporting with our Supreme Court's ruling in *Reed,* we find this issue cannot provide a basis for PCRA relief in that it was addressed in Appellant's last appeal.

■ ¶ 9 To the extent that the holding in *Reed* does not apply herein because the explanation of the basis for our direct-appeal merits resolution was unduly truncated, we will further analyze the issue. With respect to the pretrial ruling by the trial court as to the admissibility of V.B.'s testimony, the following standard of review applies:

> On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited. A trial court's decision will not be reversed absent a clear abuse of discretion. *Commonwealth v. Bishop,* 936 A.2d 1136, 1143 (Pa.Super.2007) (citing *Commonwealth v. Hunzer,* 868 A.2d 498 (Pa.Super.2005)). "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or

---

1. We observe that the notes of testimony from the pretrial motion are now contained in the record.

where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.*

*Commonwealth v. King,* 959 A.2d 405, 411 (Pa.Super.2008).

■ ¶ 10 Appellant asserts that V.B.'s testimony about his prior conduct consisted of prohibited prior bad acts evidence. Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa. R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. *Commonwealth v. Powell,* 598 Pa. 224, 956 A.2d 406, 419 (2008).

*Commonwealth v. Sherwood,* 982 A.2d 483, 497 (Pa.2009).

¶ 11 In the present case, we conclude that the evidence in question was admissible under the common scheme design or plan exception. *Luktisch, supra,* is instructive.[2] In that case, the defendant was convicted of sexually molesting his stepdaughter. At trial, the court had permitted the defendant's biological daughter to testify about sexual abuse that the defendant had perpetrated on her when she was a child, even though that abuse ended nineteen years before trial and began twenty-four years before trial. The defendant claimed that the prior assaults were too remote. We held that the prior incidents were not too distant since there was only a six-year lapse between the previous assaults and the inception of the defendant's abuse of the victim in that case.

¶ 12 We held that "while remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." *Id.* at 879 (quoting *Commonwealth v. Miller,* 541 Pa. 531, 664 A.2d 1310, 1319 (1995), *abrogated on other grounds as recognized in Commonwealth v. Hanible,* 575 Pa. 255, 836 A.2d 36, 40 n. 6 (2003)). After analyzing the facts relating to the defendant's abuse of his daughter and the victim in question, we concluded in *Luktisch* that the two incidents were factually similar and that the defendant's prior conduct was admissible under the common scheme or plan exception to the prohibition against introduction of prior bad acts.

¶ 13 Similarly, in *Commonwealth v. O'Brien,* 836 A.2d 966 (Pa.Super.2003), we reversed a trial court's refusal to permit the Commonwealth to introduce into evidence the defendant's prior assault of two minor boys in a prosecution where the defendant had sexually assaulted a third minor boy. We concluded that the facts of each incident were sufficiently comparable so that the prior sexual abuse was admissible under the common scheme or plan exception to prior crimes evidence.

¶ 14 In the case at bar, we believe that the fact pattern involved in the two incidents was markedly similar. In both

2. Although *Luktisch* predates adoption of the Pennsylvania Rules of Evidence, Pa.R.E. 404(b) embodies the common scheme or plan exception to the prohibition against use of prior crimes evidence. Thus, we rely upon that case and other cases analyzing that exception even though they were filed before enactment of those rules.

cases, the victims were of like ages: T.S. was fourteen years old, and V.B. was fifteen years old. Both victims were Appellant's biological daughters. Appellant initiated the contact during an overnight visit in his apartment. He began the sexual abuse by showing the girls pornographic movies. The assaults occurred in bed at night. While Appellant raped V.B. and indecently assaulted T.S., T.S. stopped Appellant from disrobing her and committing the more serious sexual assault. In addition, Appellant mimicked the grinding movements of sexual intercourse on T.S. in order to sexually gratify himself. These matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern. Hence, we reject Appellant's position that we are pigeonholing sexual abuse cases to such an extent that any prior instance of child abuse would be admissible in a subsequent child abuse prosecution. *See also Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989) (evidence about prior rape correctly allowed at rape-murder trial since crimes were committed in similar geographic location, at similar time, characteristics of victim matched, and defendant used same method of attack). As was the case in *Hughes*, the similarities at issue herein were "not confined to insignificant details that would likely be common elements regardless of who committed the crimes." *Id.* at 1283.

¶ 15 Concededly, the time lapse at issue in this case was lengthy. V.B.'s abuse started in fall 1986 and ended in approximately 1990. N.T. Motion, 7/29/02, at 4. The rape introduced at this trial occurred fifteen years prior to the assault at issue. *Id.* at 3. Thus, there was a ten-to-eleven-year period between the end of that abuse and the present abuse. However, as we noted in *Luktisch*, remoteness is merely one factor to be considered in determining admissibility; the importance of the gap in time is inversely proportional to the similarity between the crimes. In this case, the parallels are striking. The abuse was perpetrated in an identical manner on victims with identical characteristics and in an identical setting. The only exception was that the victim herein was able to stop the abuse from escalating. Hence, the fact that V.B.'s abuse occurred remotely to that in the present case was not determinative of the issue. In addition, since the crimes were comparable, the probative value of the evidence of V.B.'s abuse outweighed its prejudicial impact.

¶ 16 Appellant herein unconvincingly equates his case with that of *Commonwealth v. Strong*, 825 A.2d 658 (Pa.Super.2003). In *Strong*, we affirmed the trial court's disallowance of evidence of the defendant's prior criminal behavior to establish that he committed a murder. In rejecting the Commonwealth's invocation of the common plan or scheme exception to the prior bad acts prohibition, we noted that the crimes were all dissimilar. The defendant had treated each victim differently, and the geographic locations varied. Furthermore, the prior crimes had occurred eight and fourteen years, respectively, from the crime at issue. In this case, as analyzed above, the resemblance between the two incidents was nearly exact. Hence, *Strong* is not dispositive and the trial court did not abuse its discretion in admitting V.B.'s testimony. Thus, PCRA relief was properly denied.

¶ 17 Order affirmed.

¶ 18 Justice FITZGERALD files a Concurring Statement.

CONCURRING STATEMENT BY FITZGERALD, J.:

¶ 1 I agree with the learned majority's conclusion that the two incidents involving

T.S. and V.B. were similar enough to allow V.B. to testify to her incident. I write separately only to emphasize that no singular characteristic of the two abuses made them similar, and these circumstances should not be considered persuasive authority for future cases.[1] Our courts must be careful to examine each allegation of abuse on a case-by-case basis when determining similarity. In the instant case, the Commonwealth presented sufficient evidence indicating how Appellant lured and seduced each of his daughters into a sexual relationship with him. Accordingly, I agree that the totality of the similarities supported the trial court's ruling.

1. For example, the fact that the abuses occurred in bed at night would have no value if considered in a vacuum.