J-S03017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT JAMES HAVLE, III | |
| Appellant | No. 581 WDA 2016 |

Appeal from the Judgment of Sentence dated March 24, 2016
In the Court of Common Pleas of Bedford County
Criminal Division at No(s): CP-05-CR-0000066-2015

BEFORE: OLSON, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED MAY 22, 2017**

Robert James Havle, III, Appellant, appeals from the portion of his judgment of sentence in which the trial court classified him as a sexually violent predator ("SVP") under the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10 to 9799.41. We affirm.

When Appellant was 32 years old, he engaged in a sexual relationship with the victim in this case, who had just turned 13 or 14 years old at the time,[1] and who is Appellant's cousin. Appellant initiated and cultivated the relationship, which lasted for approximately two years. Appellant pressured

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The confusion about the victim's age stems from a discrepancy in what she told the police regarding her date of birth, the date of her first sexual encounter with Appellant, and the age she was on that date. *See* N.T., 3/24/16, at 59-69. The victim was either 12 or 13 years old during her first sexual encounter with Appellant, and had just turned either 13 or 14 years old when they first had intercourse.

the victim into performing various sexual acts, and told the victim not to tell anyone about the "relationship" because it would "break up the family," result in criminal charges against Appellant, and cause Appellant to commit suicide. *See* Defendant's Ex. 1 (Criminal Complaint); Commonwealth's Ex. 2 (Report of Herbert E. Hays).

On July 9, 2015, Appellant, who was then 38 years old, pleaded guilty to five counts of statutory assault and five counts of aggravated indecent assault on a person less than 16 year of age.[2] Pursuant to a plea agreement, Appellant was sentenced to four to eight years' incarceration, to be followed by ten years' probation.

Because the offenses of which Appellant was convicted are classified as "sexually violent offenses" under SORNA, *see* 42 Pa.C.S. §§ 9799.12, 9799.14, the court was required to hold a hearing to determine whether he is an SVP. *Id.* § 9799.24(e). Therefore, on March 24, 2016, immediately prior to Appellant's sentencing proceeding, the trial court held a separate hearing to determine whether Appellant had that status.[3]

---

[2] 18 Pa.C.S. §§ 3122.1 and 3125(a)(8), respectively.

[3] Under SORNA, the defendant's status initially is assessed by the State Sexual Offenders Assessment Board. 42 Pa. C.S. § 9799.24(a). After that Board prepares a report and presents it to the Commonwealth, the court holds a hearing at which the Commonwealth must prove by clear and convincing evidence that the SVP designation is appropriate. *See* *Commonwealth v. Feucht*, 955 A.2d 377, 380 (Pa. Super. 2008) (description of process under earlier version of statute that still applies under current version).

SORNA provides that a person may be designated an SVP because of "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. A "mental abnormality" is defined as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* "Predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.* The court received expert evidence from each party on whether Appellant should be classified as an SVP, and it received reports by each expert into evidence.[4]

To support a finding that Appellant is an SVP, the Commonwealth presented the testimony of Herbert Edwin Hays, a member of the State Sexual Offenders Assessment Board ("the Board"), who was admitted as an "expert in the treatment, management, and the assessment of sexual offenders." N.T. at 10. Mr. Hays opined that Appellant has hebephilia, a

---

[4] Neither party objected to the classification of the other party's witness as an expert. Appellant objected to the entry of the Commonwealth expert's report into evidence on the ground that it was hearsay and cumulative. That objection was overruled. *See* N.T. at 30-31.

sexual attraction to underage postpubescent individuals. *Id.* at 20-21, 24.[5]

Mr. Hays explained that Appellant groomed and coerced the victim before engaging in a sexual relationship for several years, which the expert considered to be predatory behavior covering a significant time period. *Id.* at 12-15, 28.[6] Mr. Hays stated that hebephilia is a lifetime condition; that statements by the victim indicated that Appellant's condition overrode his control; and that because Appellant's mental abnormality drove his sexual misconduct, it would be likely for Appellant to reoffend. *Id.* at 25-27.[7]

---

[5] The expert stated that while he opined that Appellant is a hebephiliac for purposes of the SVP statute, he was not rendering a "psychiatric or psychological . . . diagnosis." N.T. at 24, 27-28.

[6] Regarding the predatory nature of Appellant's abnormality, the expert opined:

> When [Appellant] entered a shower with the victim and then gave her a sensual massage and also kissed her at the time he initiated a relationship with the victim in whole or in part in order to facilitate victimization. When he told her not to tell anyone about their sexual relationship and if she did tell he would go to jail and the family would "fall apart" he established, maintained and promoted the sexual relationship with the victim in order to facilitate continued victimization. There is sufficient evidence for predatory behavior.

Commonwealth's Ex. 2 at 7; *see also* N.T. at 28.

[7] The report stated, "Considering the length of time and the persistence of the sexual acts in the Instant Offense there is sufficient evidence that future sexual offending is likely if given unsupervised access to young naïve impressionable teenage girls." Commonwealth's Ex. 2 at 6.

Appellant presented Dr. Timothy P. Foley, who was admitted as an expert in the same field as that of as Mr. Hays. N.T. at 70. Dr. Foley opined that Appellant did not meet the criteria for having a mental abnormality. *Id.* at 72. He stated that hebephilia is not an accepted medical diagnosis according to the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"),[8] *id.* at 74-75, 81-82, and that Appellant's sexual interest in a post-pubescent girl is "just fine," *id.* at 79. Regarding the likelihood that Appellant would reoffend, Dr. Foley used an actuarial tool called the "Static-99R,"[9] and found that Appellant "has a very low risk for future sexual misconduct." *Id.* at 77. The expert reasoned that because Appellant has had sexual relationships with persons older than 18, there is

---

[8] We have described the DSM as a "categorical classification system that divides mental disorders into types based on criteria sets with defining features" and have cited experts' opinions that the DSM is "an authoritative compilation of information about mental disorders and represents the best consensus of the psychiatric profession on how to diagnose mental disorders." *See Commonwealth v. Hollingshead*, 111 A.3d 186, 186 n.4 (Pa. Super.) (citation omitted, brackets in original), *appeal denied*, 125 A.3d 1199 (Pa. 2015).

[9] This is a classification system used to predict future recidivism. Dr. Foley defined the Static-99R as —

> a statistical method based on the records of about 30,000 sex offenders after release to the community. The items – there are ten [–] are generated statistically. It adheres to no theory. It's just measuring behavior. It allows you . . . to class[ify] the person, put the person into a group of individuals with known behavior five to ten years after release [in]to the community.

N.T. at 77.

no evidence that it was "preferred or obligatory that he have sexual contact with a minor." ***Id.*** at 79.

At the conclusion of the hearing, the trial court ordered that Appellant be classified as an SVP and imposed sentence. In its Pa.R.A.P. 1925(a) opinion, the trial court explained

> The Commonwealth's witness, Herbert Hays, testified that, based upon Defendant's mental abnormality and the circumstances of the case, it was his opinion that Defendant was likely to engage in future predatory offenses. We found Mr. Hays to be a credible witness and accepted his testimony. Upon an examination of Defendant's mental abnormality, the length of Defendant's predatory sexual behavior that occurred repeatedly over a number of years, the nature of Defendant's relationship with the victim, and Defendant's age at the time of expected parole, we concurred with Mr. Hay[s'] opinion.

Trial Ct. Op., 7/27/16, at 3.

Appellant filed no post-sentence motion, but he filed a timely appeal on April 22, 2016. Appellant raises the following issues:

> 1. The Sentencing Court erred in determining that the Defendant, Richard Havle, III, was a Sexually Violent Predator by failing to take into account 42 Pa.C.S.A. § 9799.12, 42 Pa.C.S.A. § 9799.24(a)(b).

> 2. The Sentencing Court erred in determining by clear and convincing evidence that the Defendant meets the criteria of a Sexually Violent Predator.

Appellant's Brief at 3.[10]

---

[10] Appellant does not separate his brief into two sections (one in support of each issue), in contravention of Pa.R.A.P. 2119(a). His failure to do so has no effect on our analysis, as the issues he presents overlap. We nevertheless remind counsel that they are required to comply with our rules of procedure

*(Footnote Continued Next Page)*

Both of Appellant's issues pose a challenge to the sufficiency of the evidence supporting the trial court's SVP determination.[11] Our standard of review is as follows:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

***Commonwealth v. Hollingshead***, 111 A.3d 186, 189 (Pa. Super.) (brackets in original), ***appeal denied***, 125 A.3d 1199 (Pa. 2015).

In challenging the trial court's ruling, Appellant does not contest the conclusion by the Commonwealth's expert, Mr. Hays, that Appellant is a hebephiliac and that this condition evidences a mental abnormality or disorder. ***See*** Appellant's Brief at 6 (citing ***Hollingshead***, 111 A.3d at 194). Rather, Appellant argues that the court should have separately found that Appellant is likely to engage in future predatory sexually violent offenses, and that the evidence presented on that issue was insufficient to permit such

_(Footnote Continued)_ ──────────────

and that an appeal is subject to dismissal if there is substantial noncompliance. Pa.R.A.P. 2101.

[11] Appellant's brief also casts his argument as a challenge to the weight of the evidence. That aspect of his argument has been waived by Appellant's failure to raise that claim before the trial court. ***See*** Pa.R.A.P. 302(a); Pa.R.Crim.P. 607; ***Commonwealth v. Schrader***, 141 A.3d 558, 566 (Pa. Super. 2016) (holding challenge to the weight of the evidence regarding an SVP determination must be presented to the trial court in the first instance).

a finding. *Id.* According to Appellant, a hebephiliac condition in itself provides an insufficient basis upon which to conclude that a person is likely to engage in future predatory sexually violent behavior, particularly since hebephilia "is not recognized as a disorder in the DSM-5." *Id.* Appellant contends that the Commonwealth was required to present additional evidence of a future predatory likelihood, and he points to his own expert's assessment of that question using the Static-99R tool, which led the expert to conclude that the possibility of such future conduct by Appellant is low. *Id.* at 6, 9. Appellant also criticizes the failure by Mr. Hays to evaluate the "Tanner Stages" of the victim when assessing Appellant's condition. *Id.* at 6.[12]

A defendant does not need to be medically diagnosed with a psychological or psychiatric disorder to be classified as an SVP. A finding of a "mental abnormality" in accordance with the statutory definition is sufficient. *See Commonwealth v. Dengler*, 890 A.2d 372, 383 (Pa. 2005) ("[t]he statute does not require proof of a standard of diagnosis that is commonly found and/or accepted in a mental health diagnostic paradigm"). Furthermore, arguments that an expert's testimony is unfounded or erroneous affect the weight, not sufficiency, of the evidence. *See Commonwealth v. Fuentes*, 991 A.2d 935, 944 (Pa. Super.), *appeal*

---

[12] The Commonwealth's expert explained that the "Tanner Stages" describe the extent to which a pubescent body is developing. N.T. at 47-48. The expert stated that this could be a tool used to diagnose hebephilia.

*denied*, 12 A.3d 370 (Pa. 2010); *see also Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa. Super.) (citations omitted), *appeal denied*, 963 A.2d 467 (Pa. 2008) ("while a defendant is surely entitled to challenge [a report or opinion by a member of the Board] by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case").[13] Thus, when "the expert's report and testimony support the trial court's finding that [an appellant] was an SVP, there is no basis for granting sufficiency relief." *Fuentes*, 991 A.2d at 944 (quoting *Commonwealth v. Meals*, 912 A.2d 213, 223 (Pa. 2006)); *see also Hollingshead*, 111 A.3d at 194 (holding it would not disturb trial court's decision to credit Commonwealth's expert witness over defense expert witness on a challenge to the sufficiency of an SVP determination based on a hebephilia diagnosis).

Moreover, while the court must examine "the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine . . . , the risk of re-offending is but one factor to be considered when making an assessment; it is not an 'independent element.'"

---

[13] Although ***Dengler***, ***Feuntes***, and ***Feucht*** predate the current statutes governing assessment of a sexually violent predator, the current statutes do not materially differ from the previous statutes governing this determination. Accordingly, we may rely on caselaw predating the current statutes to the extent the versions are not inconsistent. ***Cf. Commonwealth v. Aikens***, 990 A.2d 1181, 1185 n.2 (Pa. Super.) (noting that this Court may rely on caselaw predating the enactment of the Pennsylvania Rules of Evidence to the extent the caselaw is consistent), ***appeal denied***, 4 A.3d 157 (Pa. 2010).

*Commonwealth v. Stephens*, 74 A.3d 1034, 1038–39 (Pa. Super. 2013);

*accord Hollingshead*, 111 A.3d at 190 (citation omitted). It is improper for

a court to base its decision solely upon an expert's projection of recidivism.

*See id.* (defense expert's focus on risk of recidivism of hebephiliac was

misplaced).

Therefore, Appellant's arguments that Mr. Hays' testimony was

unfounded or erroneous challenge the weight, not the sufficiency, of the

evidence. *Fuentes*, 991 A.2d 944.[14] Indeed, regarding the absence of

hebephilia from the DSM-5, we have previously held that "the debate

surrounding hebephilia diagnoses, and their use in SVP proceedings, goes to

the weight of the expert witness' testimony," not its sufficiency

*Hollingshead*, 111 A.3d at 193. By the same token, because Appellant has

cited no law making an examination of a victim's "Tanner Stages" a required

element of an SVP analysis, Appellant's argument regarding the absence of

such evidence also does not go to sufficiency. Appellant's own expert

---

[14] We note the difference between challenges to the weight of the expert evidence regarding hebephilia, and an argument that the evidence regarding hebephilia is inadmissible or subject to a *Frye* hearing. *See Dengler*, 890 A.2d at 377-83 (citing *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which held that, in order to be admissible, the expert's testimony must be based on evidence sufficiently established and accepted in the relevant scientific community); *Hollingshead*, 111 A.3d at 193 n.6. While Appellant did object at the hearing to the admission of Mr. Hays' testimony regarding hebephilia, claiming that it is not recognized in the field, *see* N.T. at 19-21, Appellant did not ask the court to conduct a *Frye* hearing and does not specifically raise an admissibility issue on appeal.

witness, Dr. Foley, conceded that a Static-99R test also is not required or necessary to make an SVP determination, *see* N.T. at 88 — a concession that clearly is correct in light of the fact that a risk of recidivism is only one of many factors to be considered by a court in making such a determination. *Hollingshead*, 111 A.3d at 194.

Finally, Appellant claims that Mr. Hays' testimony was insufficient because he failed to examine the fourteen factors listed in Section 9799.24 of SORNA. Appellant's Brief at 6, 8. Mr. Hays is a member of the SORNA Board that makes an initial assessment of a defendant's SVP status prior to the determination by the court, and Section 9799.24(b) lists the following factors that a Board member is to consider when making that assessment:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b). Appellant argues that a proper evaluation of the fourteen factors would lead to a conclusion that he is not an SVP. He notes that there was a single victim who was 13-15 years old and had no mental disabilities, there was a family relationship between the parties, there was no use of physical force by Appellant, and Appellant had no prior offenses. *Id.* at 9.[15]

In *Feucht*, we stated the following with regard to the fourteen factors:

> . . . [T]here is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP

_____

[15] Appellant characterizes his crime as having fallen in love and having had a non-violent sexual relationship with a post-pubescent girl. Appellant claims that he made the complaining witness "feel special" and that "postpubescent . . . sexual interest in several cultures wouldn't even be considered predatorial." Appellant's Brief at 6, 9.

designation. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities.

Thus, while the Board is to examine all the factors listed . . ., the Commonwealth does not have to show that any certain factor is present or absent in a particular case. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses.

*Feucht*, 955 A.2d at 381 (citations omitted). While the presence of certain factors indicate a mental abnormality, the absence of factors is not conclusive of the absence of a mental abnormality. *Id.* In any event, the record shows that Mr. Hays did examine the fourteen factors before arriving at his opinion, upon which the court relied, that Appellant should be designated an SVP. *See* N.T. at 13-57; Commonwealth's Ex. 2 at 4-6. Appellant's argument based on Section 9799.24(b) therefore is without merit.

We hold that there was clear and convincing evidence to establish Appellant's SVP determination by the trial court, and Appellant's arguments to the contrary regarding the sufficiency of the evidence are unavailing. *Feucht*, 955 A.2d at 382.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2017