J-S33037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN WILLIAMS | : | |
| | : | |
| Appellant | : | No. 421 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009034-2017

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED AUGUST 07, 2020**

Appellant John Williams appeals from the judgment of sentence entered

in the Court of Common Pleas of Philadelphia County on January 11, 2019,

following his conviction of rape of a child and related offenses in connection

with his stepdaughter, N.P.  We affirm.

On July 25, 2018, the Commonwealth filed a motion to admit prior acts

of Appellant pursuant to Pa.R.E. 404(b).[1]   Therein, the Commonwealth

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Pa.R.E. 404 provides, in relevant part, as follows:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is
not admissible to prove a person's character in order to show that
on a particular occasion the person acted in accordance with the
character.

argued, *inter alia*, that the following facts were admissible at trial to show

Appellant's common plan, scheme, and design in engaging in sexual activity

with young girls placed in his care:

> In the summer of 2004, [Appellant] sexually molested his daughter, S.W., aged 12 years old, at his residence [    ].[2] Appellant touched S.W. with his hands and fingers "all over [her] body," on her legs, chest, buttocks, and "other personal spot," (vagina) under her clothes. These incidents occurred "all throughout the house," and every time S.W. visited [Appellant's] residence.  Though S.W. told [Appellant] to stop, [Appellant] continued to abuse and even threatened to "do something else" if S.W. confessed the abuse.

**See** Commonwealth's Motion in Limine to Admit Other Acts/Crimes Evidence

Pursuant to Pa.R.E. 404(b), filed 7/25/18 at 3 (some brackets added). The

parties presented argument on the motion on October 23, 2018.  At that time,

---

> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> *(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

[2] We have modified the quotation from the Commonwealth's motion along with the trial court's statement of facts to remove proper names, specific dates, and addresses so as to protect N.P.'s identity.

the Commonwealth averred S.W.'s testimony would constitute valuable and probative evidence to boost the credibility of N.P. as N.P.'s testimony would occur in isolation and many years after the abuse had occurred. *Id*. at 3-5. After hearing argument and upon noting it had conducted its own legal research, the trial court ultimately granted the Commonwealth's motion, *id*. at 8, and the matter proceeded to a jury trial.[3]

The trial court set forth the relevant facts revealed at trial as follows:

> The Complainant, N.P. was born [in August of 1998]. (N.T. 10/24/18 at 21). Throughout most of her life, N.P. knew the Appellant as a stepfather to her and her four siblings. (*Id*. at 22, 25-26). N.P., her siblings, the Appellant, and [N.P.'s Mother] shared a residence [ ] in Philadelphia. *Id*. At 25-26, 63). At trial, N.P. testified to multiple instances of sexual abuse by the Appellant, which spanned the course of nearly ten years. The first incident occurred in the [ ] home, when N.P. was five years old. (*Id*. at 23-24). The Appellant took N.P. to his bedroom, sat her at the edge of the bed, touched the outside of her vaginal area, and digitally penetrated her vagina. (*Id*. at 23). N.P. testified that similar episodes occurred while they were living on [ ], but she could not remember how may there were. (*Id*. at 24-25). N.P. further explained that these incidents occurred during the day, while her mother was at work. (*Id*. at 23, 25-26, 65). At the time, she did not disclose the abuse to anyone because "she was scared and embarrassed." (*Id*. at 26).
> In 2006, when N.P. was around eight years old, the family moved to a different home [ ] in Philadelphia. (*Id*. at 28, 63). Around that time, the Appellant moved out of the home for one to two years but moved back when N.P. was eleven or twelve. (*Id*. at 28-29, 64). When he moved back in, he continued to sexually assault N.P. (*Id*. at 29). Specifically, he touched the outside of

---

[3] The Commonwealth also had intended to present at trial the testimony of the daughter of Appellant's wife's cousin, T.P., who referred to Appellant as "uncle." T.P. would have stated Appellant had sexually abused her as well. *See* Commonwealth's Motion in Limine at 1-2. However, T.P. was in the hospital and unavailable to testify at the time of trial. N.T. 10/24/18, at 128.

her vagina and digitally penetrated her on multiple occasions. (*Id*. at 29). At some point, the Appellant's behavior escalated; N.P. testified that the Appellant had vaginal intercourse with her on two occasions. (*Id*. at 29-30). She explained that both times, the intercourse hurt and that she "scream[ed] and flinch[ed]," but the Appellant did not stop. (*Id*. at 30).

The first instance involving vaginal intercourse occurred in the living room. (*Id* at 31). N.P testified that she was sitting on the couch when the Appellant started rubbing her vaginal area, outside of her underwear. (*Id*.). He then placed her on the arm of the couch, pulled his pants down, and inserted his penis into her vagina. (*Id*.). On a different occasion, N.P. was getting dressed in her bedroom when the Appellant entered her room and asked her if she needed help putting on lotion. (*Id*. at 32-33). She told him that she did not want help, but he rubbed it on her anyway. (*Id*. at 32). He then pushed her onto her bed, climbed on top of her, and inserted his penis into her vagina. (*Id*.). N.P. did not disclose the abuse to anyone because she felt ashamed and embarrassed. (*Id*. at 34).

When N.P. was fifteen years old, she finally disclosed the Appellant's abuse to her cousin [ ]. N.P. was sleeping over her cousin's home when she told her that the Appellant used to sexually assault her. (*Id*.). Neither N.P. nor her cousin reported the abuse to the police because N.P. was scared and assumed that no one would believe her. (*Id*. at 36, 100). Four years later, when N.P. was nineteen years old, she disclosed the abuse to her mother and brother. (*Id*. at 36, 67, 86). [N.P.'s Mother] testified that, when N.P. finally disclosed the abuse, N.P. was "hysterically crying, shaking, just very—I've never seen my daughter that upset. Very, very upset." (*Id*. at 69). Afterwards [N.P.'s Mother] reported the allegations to the police. (Id.).

At trial, the Commonwealth also elicited testimony from S.W., The Appellant's biological daughter. (N.T. 10/24/18 at 107). S.W. testified that she used to frequently visit the Appellant's home on [ ] (*Id*. at 108). In the summer of 2004, when S.W. was twelve years old, the Appellant started to have inappropriate, sexual contact with her. (*Id*. at 109). The first incident occurred in the Appellant's living room, while most of the household members were watching TV. (*Id*.). S.W. explained the incident as follows:

> **S.W**. [M]e and my brothers and sisters had went over
> to his house to visit him and our other family members.
> Everybody was in the living room watching TV doing they

own thing and he was sitting on the step. He told me to come over towards him and has me coming over towards him. He put his hands down my pants and was touching my private area. When I went to move back, he pulled me closer towards him and he continued on touching me.

…

**ADA**: You said that he touched your private area?

**S.W.**: Yes.

**ADA**: What specifically did he do?

**S.W.**: Put his hand down my pants and touched, rubbing on my private area.

**ADA**: The inside or outside?

**S.W.**: The inside.

**ADA**: You said other people were in the living room?

**S.W.**: Yes, everybody was just doing their own thing.

…

**S.W.**: The whole house was crowded. The whole house was crowded, so everybody just up and down the steps, running back and forth. And he was like- the steps like right here and he is just sitting on the side of the steps. And I walked over towards him up the steps and that is when he pulled me towards him. He put his hands in my pants and started constantly rubbing on my private area. When I went to move back, he pulled me closer to him.

**ADA**: Just for the record, the witness pointed her hand down towards her pants and moved it in the area [sic] down to the belt area of her pants, up and downward.

**THE COURT**: So noted.

(*Id*. at 109-12).

S.W. testified that during a different visit, after [N.P.'s Mother] had left for work, the Appellant woke her up and told her to come to his bedroom. (*Id*. at 110, 113). The Appellant made her lie on his bed before groping her breasts and touching her "private area." (*Id*. at 110). S.W. explained that she was uncomfortable and emotional during the incident stating, "[a]s I was lying back on the bed, I was crying- he asked was I okay and I said, [y]eah, but I knew I wasn't okay, and it just kept on continuing." (*Id*. at 110, 113). S.W. further testified that the Appellant groped her or touched her "private areas" every time she visited him (*Id*. at 109; 114; Com. Mot. in Limine to Admit Other Acts at 3).

Trial Court Opinion, 9/6/19, at 1-5 (some brackets added).

Appellant was found guilty of rape of a person less than thirteen years old; unlawful contact with a minor; endangering the welfare of a child; indecent assault of a person less than thirteen years old; and aggravated indecent assault of a child.[4] On January 11, 2019, Appellant received an aggregate sentence of thirty-seven (37) years to seventy-four (74) years in prison.

Appellant filed a timely appeal on February 1, 2019. On March 21, 2019, the trial court directed Appellant to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on June 10, 2019. The trial court filed its Rule 1925(a) Opinion on September 6, 2019.

In his brief, Appellant presents the following issue for our review:

> DID THE TRIAL COURT ERR WHEN IT GRANTED THE COMMONWEALTH'S MOTION TO ADMIT PRIOR BAD ACTS EVIDENCE PURSUANT TO PA.R.E. 404 (B), AS THE PROBATIVE VALUE OF THIS EVIDENCE WAS OUTWEIGHED BY ITS POTENTIAL FOR UNFAIR PREJUDICE?

Brief for Appellant at 2.

When analyzing the trial court's pretrial ruling that S.W's testimony would be admissible, we apply the following, well-settled standard of review:

> On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited. A trial court's decision will not be reversed absent a clear abuse of discretion. Abuse of discretion is

---

[4] 18 Pa.C.S.A. §§ 3121, 6318, 4504, 3126, 3125, respectively.

not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Commonwealth v. Aikens**, 990 A.2d 1181, 1184–85 (Pa.Super. 2010) (citations and quotation marks omitted). **See also Commonwealth v. Tyson**, 119 A.3d 353 (Pa.Super. 2015) (*en banc*), *appeal denied,* 633 Pa. 787, 128 A.3d 220 (Pa. 2015).

Pennsylvania Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." **See Commonwealth v. Moser**, 999 A.2d 602, 605–06 (Pa.Super. 2010); **see also** Pa.R.E. 404(b). "[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." **Commonwealth v. Melendez–Rodriguez**, 856 A.2d 1278, 1283 (Pa.Super. 2004). Such evidence is admissible only if offered for a non-propensity purpose. **Id.**

Where, as herein, the Commonwealth seeks to admit a prior bad act under the common plan, scheme, or design exception, the trial court first must consider the details and surrounding circumstances of each incident to "assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the perpetrator." **See Commonwealth v. G.D.M., Sr.**, 926 A.2d 984, 987 (Pa.Super. 2007). Matters for consideration include "the habits or patterns of action or conduct

undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator." *Id.*

Generally, the trial court also must look at additional balancing factors, including remoteness and potential for prejudice. *Id.* When considering remoteness, if the details of the crimes are "nearly identical," the court may excuse a lapse of time unless it is "excessive." *Id.* When considering potential prejudice, the court must examine: 1) the degree of similarity between the crimes; 2) the Commonwealth's need to present evidence; and 3) the ability of the trial court to caution the jury concerning the proper use of such evidence in their deliberations. *Id.*; *see also Commonwealth v. Dillon*, 921 A.2d 131, 141 (Pa. 2007) (noting that unfair prejudice is a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially).

Relevant to our analysis herein, this Court previously has noted that:

[t]he essential elements of the act of rape, as well as other sexual crimes, will necessarily produce any number of similar characteristics when two acts of rape are scrutinized for shared features, particularly where, as we have here seen, there is commonality of roles and situs attendant the criminal episodes.

*Commonwealth v. Frank*, 577 A.2d 609, 614 (Pa.Super. 1990). Due to these "similar characteristics," our courts also have considered additional qualities to determine substantial similarity under the unique facts and circumstances of each case , including: the race, age, and sex of the victims; the time of day of the crime; the proximity to the defendant's home and

between the crime scenes and; the manner and location to which the victim was taken. *Id.* at 614–15. For example, in *Tyson*, *supra*, this Court remarked that the similarities among the allegations were substantial, including that: 1) the defendant was acquainted with both victims; 2) the victims were of the same age and race; 3) the defendant was an invited guest in each victim's home; 4) the defendant assaulted the victims while they were in a weakened state; 5) each victim lost consciousness; 6) each victim woke in her bedroom early in the morning to find the defendant having vaginal intercourse with her. *Id.* at 360. Thus, the panel concluded that the evidence should be admissible to show that the defendant had a common scheme of nonconsensual intercourse with unconscious victims. *Id.* at 361.

Herein, Appellant contends he did not receive a fair trial as the prejudicial effect of S.W.'s testimony exceeded its probative value because her allegations of abuse bore little resemblance to those of N.P. Brief for Appellant at 16-21. He further maintains the sole purpose for S.W.'s testimony was to establish Appellant's "bad character" or "propensity for committing criminal acts." *Id*. at 15, 20. Appellant stresses he had not been prosecuted for his alleged assaults against his daughter S.W. and that, in fact, a DHS report indicated S.W. recanted allegations she had made to a DHS caseworker. *Id*. at 15, 19-20. As a result, Appellant asserts "it was impossible for the jury to be fair and impartial." *Id*. at 20.

In support of its decision to grant the Commonwealth's motion, the trial court reasoned as follows:

> In the case at bar, the similarities between the incidents involving S.W. and N.P. are striking and clearly demonstrate the Appellant's common scheme,  In both cases, there was an extended pattern of abuse.  The incidents involving N.P. began when she was five years old, continued for three years, temporarily ceased when the Appellant moved away, and began again when he moved back into her home. (N.T. 10/24/18 at 24-26, 29-32).  The incidents involving S.W. began when she was twelve, continued for two years, and stopped when the Appellant moved into his home on [ ].  The victims were also similar in age; although the Appellant's abuse of N.P. started when she was five years old, the Appellant abused both victims when they were between the ages of eleven and twelve.  (*Id*. at 29-30, 109; Comm. Mot. at 3).  The Appellant abused both victims in his living room and bedroom in his [ ] home.  (N.T. 10/24/18 at 24, Com. Mot. At 3).  Both victims were African American and female. (Comm. Mot. At 9).  There also is a congruous role between the Appellant and both victims. Specifically, the Appellant is a stepfather or biological father to both victims, and the Appellant was acting within a guardian capacity when he abused each of them.  (N.T. 10/24/18 at 22, 25, 107; Comm. Mot. At 3,9). Further, the acts committed against the victims are similar.  Both victims testified that the Appellant's initial episodes of abuse involved the Appellant rubbing and digitally penetrating their vagina.  (N.T. 10/24/18, at 23 109; Comm. Mot. at 1).  Both victims testified that they resisted the Appellant, cried, screamed, or told him to stop, but he continued his abuse despite their pleas. (N.T. 10/24/18, at 30, 110; Comm. Mot. At 3).
> Accordingly this court found that the incidents were sufficiently similar and, therefore, slightly probative of Appellant's common scheme to isolate and sexually abuse young girls in his care.  . . .

Trial Court Opinion, 9/6/19 at 7, 10-11.  We find the trial court did not abuse its discretion in reaching this result.

In **Aikens**, **supra**, the this Court held the trial court had properly admitted evidence that Aikens had sexually abused his biological daughter,

V.B., as proof of his common scheme, plan, or design to abuse a second biological daughter, T.S. In doing so, we observed the "fact pattern involved in the two incidents was markedly similar." *Id.* at 1185–86. The victims were the same age at the time of the abuse (V.B was 14 and T .S. was 15). *Id.* at 1182–83, 1185–86. In addition, Aikens initiated the sexual abuse while the victims were staying in his apartment; he showed pornographic movies to the victims, the assaults occurred at night in Aikens' bed, and he mimicked sexual intercourse to gratify himself. *Id.* at 1185–86. We found that "[t]hese matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern." *Id.* at 1186 (emphasis added).

Like **Aikens**, the matter *sub judice* involves a pattern of abuse of two, young African American females that is markedly alike. N.P. and S.W. had similar relationships with Appellant, a stepdaughter and a biological daughter, respectively. Each was approximately the same age when she was abused by Appellant at the identical location, his home. Appellant used the same method of mauling and digitally penetrating the girls when N.B.'s mother was not at home. These matching characteristics are not insignificant details; they elevate the incidents into a unique pattern that distinguishes them from another child-abuse factual pattern. **See Commonwealth v. Hughes**, 521 Pa. 423, 555 A.2d 1264 (1989) (evidence about prior rape correctly allowed at rape-murder trial since crimes were committed in similar geographic

- 11 -

location, at similar time, characteristics of victim matched, and defendant used same method of attack). Since the crimes were comparable, the probative value of the evidence of S.W.'s abuse outweighed its prejudicial impact. Thus, the trial court did not err when it allowed the Commonwealth to present the prior bad act evidence. Pa.R.E. 404(b)(2).

Moreover, when delivering its final instruction to the jury, the trial court included the following cautionary instruction about S.W.'s testimony:

> You have heard evidence tending to prove that [Appellant] was guilty of improper conduct with [S.W.], for which he is not on trial. I am speaking of the testimony to the fact that he had on multiple occasions penetrated her vagina with his fingers and touched her breast when she was 12-years-old. This evidence is before you for a limited purpose, that is, for the purpose of tending to show motive and intent, state of mind, common, scheme, or plan, and to rebut any claim of mistake or any inference of fabrication. This evidence must not be considered by you in a way other than for the purpose I just stated. You must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendency from which you might be inclined to infer guilt.

N.T., 10/25/18, at 55-56.

In so instructing the jury, the trial court ameliorated any prejudice by informing it that the other crimes evidence was admissible for the limited and narrow purpose of determining Appellant's motive and intent and to rebut any claim of mistake or inference of fabrication. The court cautioned the jury not to regard the evidence as showing that Appellant was a person of bad character or of criminal tendencies. A jury is presumed to have followed the trial court's instructions on the applicable law. *Commonwealth v. Harris*, 817 A.2d 1033, 1053 (Pa. 2002). Thus, in light of the facts herein, "the

probative value of the evidence to the Commonwealth's largely circumstantial case clearly outweighed any unfair prejudicial effect, which was properly limited by the trial court's cautionary instructions to the jury." ***Commonwealth v. Hicks***, 156 A.3d 1114, 1129 (Pa. 2017).

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/20