J-A21015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER KOCH | : | |
| | : | |
| Appellant | : | No. 3117 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 28, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000894-2018

BEFORE:  LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 16, 2020**

Christopher Koch appeals from the judgment of sentence, imposed in the Court of Common Pleas of Delaware County, after a jury convicted him of simple assault[1] and terroristic threats.[2]  Upon careful review, we affirm.

On the night of December 5, 2017, Heather Rossiter was asleep in her daughter's bedroom because she and Koch, her husband, "had been fighting all day."  N.T. Trial, 9/18/19, at 49.  Rossiter's daughter and baby son were both in the room with her.[3]  Rossiter awoke to find Koch "grabbing [her] throat calling [her] a slut[,] saying that he was going to kill [her]."  ***Id.*** at 50.  Koch then dragged her to the floor and "started spitting in [her] face and

_____

[1] 18 Pa.C.S.A. § 2701(a)(1).

[2] 18 Pa.C.S.A. § 2706(a)(1).

[3] Rossiter's daughter was 10 years old and her son was almost 3 at the time of trial.  ***See*** N.T. Trial, 9/18/19, at 46.

calling [her] a slut and saying that [she] cheated on him and that he was going to take the kids away from [her]." *Id.* Rossiter's head hit the metal railing of her daughter's bed as Koch dragged her to the floor. *Id.* at 53. Koch kicked Rossiter in the side and hit her "over and over," mostly in her face. *Id.* at 52. The next morning, Rossiter had "lots of swelling" around her eye and cheekbone. *See id.* at 59. She later sought medical treatment for a fractured nose. *See id.* at 65. Rossiter's bruises from the incident lasted for weeks. *See id.* at 68.

Koch was arrested on December 6, 2017, and charged with aggravated assault,[4] simple assault, terroristic threats, and harassment. Following a jury trial, Koch was convicted of simple assault and terroristic threats. On October 28, 2019, the court sentenced Koch to an Intermediate Punishment Plan of 23 months for simple assault, followed by one year of probation for terroristic threats. Koch filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following claims for our review:

> 1. Whether the trial court erred in precluding [Koch] from presenting factual witnesses to testify to facts that were in direct contradiction to that of the victim and to show motive for the

---

[4] The aggravated assault charge was dismissed following a preliminary hearing on February 12, 2018. However, the Commonwealth subsequently refiled that charge and, after a preliminary hearing held on February 26, 2018, Koch was held for court on the charge. The aggravated assault charge was consolidated with the other charges for trial.

victim/witness testimony and which were relevant to [Koch's] motion to introduce pursuant to Pa.R.E. 404(b)[.]

2. Whether the trial court erred in denying [Koch's] request for a jury instruction to the [charge of] terroristic threats consistent with **Commonwealth v. Anneski**[, 525 A.2d 373 (Pa. Super. 1987)].

Brief of Appellant, at 4.

Koch first alleges that the trial court erred in precluding the testimony of Rossiter's first husband, Greg Shea, which Koch asserts would have proved that Rossiter had a history of making false allegations when confronted with a threat to remove her children from her custody. In particular, Koch claims that the instant altercation with Rossiter arose when Koch came home and confronted her after learning that "his wife and mother of his child had been in contact and engaging with other men via an online dating service." Brief of Appellant, at 8. Koch asserts that, although the alleged altercation occurred at approximately 10:00 p.m. on December 17, 2017, Rossiter did not call the police until 5:00 a.m. the following morning. Koch claims that, in the intervening time period, he threatened to take custody of their son. Koch alleges it was this threat that led Rossiter to contact police and make false allegations about him.

Koch alleged that, in 2008, Rossiter's ex-husband, Shea, had similarly threatened to seek full custody of their child after Shea discovered that Rossiter had engaged in an extra-marital relationship with a man she met online. Thereafter, Koch argues, Rossiter made false allegations that Shea had sexually abused their daughter.

Prior to trial, Koch filed a notice of intent to introduce evidence pursuant to Rule 404(b) in which he averred, *inter alia*, the following:

> 7. That the defendant intends to introduce evidence by witnesses, specifically the victim's ex-husband who will testify that the victim made numerous false statements regarding the actions of said witness, including but not limited to abuse by the husband against the victim; abuse by the husband/witness in regard to the victim's minor child.
>
> 8. That the defendant will be presenting court records from the matter of **Shea v. Shea** wherein the Court of Common Pleas of Snyder County had determined that the statements and allegations made against the prior husband were false and that after such statements, the victim was found in contempt of [c]ourt.
>
> 9. That the victim['s ex-]husband will testify as to the nature of the allegations and the multiple false statements made against him in court, evidencing a consistent pattern and motive in victim's acts when confronted with any type of issue regarding custody or visitation and further, evidence of wrong acts of the victim by giving false statements to the court to such a degree that she was held in contempt.

Defendant's Notice of Intention to Introduce Pa.R.E. 404(b)(2) Evidence, 5/13/19, at ¶¶ 7-9.

The Commonwealth moved to preclude Shea's testimony, arguing that it was unduly prejudicial under Pa.R.E. 403 and that defense counsel was able to accomplish his impeachment goals through cross-examination of Rossiter. Defense counsel argued that, while Rossiter admitted to the falsity of certain previous statements under cross-examination, she repeatedly responded, "I don't remember" to other questions. Defense counsel argued that Shea would

testify conclusively as to the facts surrounding his custody dispute with Rossiter.

Following argument, the trial court concluded that, under Pa.R.E. 403, the probative value of Shea's testimony was outweighed by its unfairly prejudicial nature, the needless presentation of cumulative evidence, and the fact that "the 2008 case is not why we're here." Trial Court Opinion, 2/14/20, at 3; N.T. Trial, 9/19/19, at 11. Accordingly, the court declined to admit Shea's testimony.

We begin by noting that the admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. *Commonwealth v. Minich*, 4 A.3d 1063, 1068 (Pa. Super. 2010).

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002); Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Koch sought to admit Shea's testimony as "motive" and "common plan" evidence under Rule 404(b), which provides, in relevant part, as follows:[5]

> (b) Crimes, Wrongs or Other Acts.
>
> > (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > (2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b). "[T]he use of specific instances of a victim's prior conduct are admissible to show a victim's character trait only if the trait in question is probative of an element of a crime or a defense." ***Minich***, 4 A.3d at 1071. However, "whenever the accused seeks to offer character evidence for purposes of attacking or supporting the credibility of a victim who testifies, the admissibility of such evidence is governed by Pa.R.E. 608 and proof of

_____

[5] We note that Koch's appellate brief is devoid of citation to any precedent specifically applicable to his claim that Shea's testimony is admissible under Rule 404(b). Rather, Koch's citations are limited to cases addressing the general constitutional principle that a defendant is entitled to present witnesses on his behalf, and cases explicating the definition of relevant evidence. While those cases are valid in and of themselves, they are irrelevant to the case at hand to the extent that they do not address the limitations on the admission of the evidence Koch sought to admit as set forth in the Rules of Evidence, and specifically, those limitations contained in Rule 404(b).

specific incidents of conduct by either cross-examination or extrinsic evidence is prohibited." *Id.* at 1072.

Here, evidence relating to a custody proceeding that occurred nine years prior to the incident in question, and eleven years prior to trial, is probative of neither motive nor the existence of a common scheme on the part of Rossiter. "To be admissible under [the motive] exception, there must be a specific 'logical connection' between the other act and the crime at issue which establishes that 'the crime currently being considered *grew out of or was in any way caused by the prior set of facts and circumstances*.'" *Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa. Super. 2012), quoting *Commonwealth v. Martin*, 387 A.2d 835, 838 (Pa. 1978) (evidence that murder victim struck defendant with chair thirteen days before he was killed admissible to establish motive) (emphasis added). The mere identification of similarities between the prior bad acts and the crime at issue does not establish motive. *Ross*, 57 A.3d at 101.

Here, there is no causal connection between the 2008 custody proceedings involving Rossiter and her ex-husband and Rossiter's allegations against Koch in 2017. While certain similarities are present in the two incidents—the threat of custody proceedings and the leveling of allegations of abuse—the former set of circumstances does not establish a motive for the latter. *See id.* Accordingly, Koch's claim that Shea's testimony should have been admitted under the Rule 404(b) motive exception is meritless.

Similarly, Shea's testimony was not admissible to prove a common plan or scheme.

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. . . . If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive.

*Commonwealth v. Tyson*, 119 A.3d 353, 358–59 (Pa. Super. 2015). In determining whether evidence of prior bad acts is admissible to show a common plan, "much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." *Commonwealth v. Shively*, 424 A.2d 1257, 1259 (Pa. 1981), quoting McCormick, Evidence, § 190 (1972 2d ed.). Additionally, the remoteness in time of the prior bad act must be considered in determining its probative value under the theory of common scheme, plan or design. *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010). "[T]he importance of the time period is inversely proportional to the similarity of the crimes in question." *Id.*

Here, one eleven-year-old instance of Rossiter allegedly fabricating an allegation against her ex-husband in an unrelated custody proceeding does not meet the standard for the admission of Shea's testimony to show a

common plan or scheme under Rule 404(b)(2). The allegations—in that case, sexual abuse of a child and, in this case spousal abuse—are not "so nearly identical as to become the signature" *Tyson*, *supra*. Moreover, the significant lapse in time between the two events militates strongly against the admissibility of the evidence.

Additionally, it is apparent that the overarching purpose for which Koch sought to present Shea's testimony was simply to attack the credibility of Rossiter's testimony against him in this matter and to portray her as a fabricator of abuse allegations. Koch sought to do so by eliciting testimony from Shea regarding a specific instance of Rossiter's prior conduct—her alleged fabrication of allegations of sexual abuse perpetrated by Shea against her daughter. However, Pa.R.E. 608 bars the admission of specific instances of a witness's conduct solely to impeach that witness's character for truthfulness. *Minich*, *supra*.

At trial, Koch's counsel extensively and thoroughly cross-examined Rossiter regarding the 2008 custody proceeding and her allegation of child abuse against Shea. *See* N.T. Trial, 9/18/19, at 70-134. Counsel was able to utilize documents from the 2008 custody proceeding during that cross-examination and succeeded in eliciting testimony from Rossiter that the prior allegations against Shea were, in fact, determined to be unfounded. *See id.* at 91 ("Q: Okay. Would you agree with me [the report of abuse] was not founded? A: It was not founded.). Because Koch has failed to establish that Shea's testimony was admissible under Rule 404(b), we can discern no abuse

of discretion on the part of the trial court in determining that the testimony would be both cumulative and unfairly prejudicial and was, therefore, inadmissible.

Lastly, Koch claims that the trial court erred in denying his request for a jury instruction on the charge of terroristic threats consistent with *Anneski*, *supra*. In that case, the appellant challenged her conviction for terroristic threats after she stated, during an argument with her neighbor, that if the neighbor tried to run over her kids again at the bus stop, Anneski would "bring a gun and use it." *Id.* at 374. In reversing Anneski's conviction on weight-of-the-evidence grounds,[6] the Court noted that "the purpose of the [terroristic threats statute] 'is to impose criminal liability on persons who make threats which seriously impair personal security. . . . It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger.'" *Id.* at 376, quoting 18 Pa.C.S.A. § 2706, comment. Because the Court found that Anneski's was a "spur-of-the-moment threat resulting from transitory anger,' *id.*, it awarded her a new trial.

---

[6] In Koch's brief, he incorrectly claims that the Court's holding in *Anneski* pertained to jury instructions for the offense of terroristic threats. *See* Brief of Appellant, at 25 ("In [*Anneski*,] the Supreme Court made the distinction as to the standard instruction as to [t]erroristic [t]hreats and the need for further instruction as to the caveat making the distinction between a criminal liable [*sic*] threat, versus a spur[-]of[-]the[-]moment threat resulting from anger."). However, jury instructions were not an issue in that case, and the Court addressed this issue solely in the context of a weight-of-the-evidence analysis. *See Anneski*, *supra*.

- 10 -

Koch argues that, as in **Anneski**, his threat to Rossiter that "he would kill her" was a spur-of-the-moment threat bought on by his anger at discovering Rossiter's marital infidelity. Accordingly, he claims that he was entitled to an instruction based on the holding in **Anneski**. We disagree.

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

**Commonwealth v. Brown**, 911 A.2d 576, 582–83 (Pa. Super. 2006) (citation, quotation marks, and brackets omitted).

"[A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." **Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014), quoting **Commonwealth v. Trippett**, 932 A.2d 188, 200 (Pa. Super. 2007). A jury charge should not be rigidly inspected by a reviewing court, and

reversible error should not be found for every technical inaccuracy; error should only be found if taken as a whole, the jury charge inadequately and inaccurately set forth the applicable law. ***Commonwealth v. Daniels***, 963 A.2d 409, 430 (Pa. 2009).

Koch challenges the court's instruction on the offense of terroristic threats. "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1).

The trial court issued the following instruction with regard to that offense:

> The [d]efendant has been charged with the offense of [t]erroristic [t]hreats. To find the [d]efendant guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt. First, that the [d]efendant communicated either directly or indirectly a threat. The term communicate means conveys in person or by written or electronic means including telephone, electric mail, internet, facsimile[e], telex and similar transmission. Second, the [d]efendant communicated the threat to commit a crime of violence, specifically murder, with intent to terrorize another.

N.T. Trial, 9/20/19, at 84.

The instruction given by the court clearly, adequately, and accurately presented the law to the jury, ***Antidormi***, ***supra***, and closely tracks the language of the Pennsylvania Suggested Standard Jury Instruction for the

offense of terroristic threats. **See** Pa. SSJI (Crim), §15.2706.[7]  Therefore, we presume the instruction is accurate. **See Commonwealth v. Kerrigan**, 920 A.2d 190, 198 (Pa. Super. 2007). We further note that Koch has not provided us with the language he believes the court should have used in its jury instruction on this charge.

Finally, Koch cannot demonstrate that he was prejudiced by the court's refusal to instruct based on **Anneski**.  The evidence adduced at trial, if believed by the jury, supported a finding that Koch possessed the requisite intent to terrorize Rossiter when he threatened to kill her.  At the time he uttered the words "I will kill you," Rossiter testified that Koch was "grabbing [her] throat [and] calling [her] a slut."  N.T. Trial, 9/18/19, at 49.  Koch then

_____

[7] The suggested standard jury instruction reads, in relevant part, as follows:

> The defendant has been charged with the offense of terroristic threats. To find the defendant guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt:

> First, that the defendant communicated, either directly or indirectly, a threat, which was received by the victim.  The term "communicates" means conveys in person or by written or electronic means, including telephone, electronic mail, internet, facsimile, telex, and similar transmissions.  In other words, communication can be done by words or deeds conveyed in any manner.  A present ability to inflict harm is not required.  There is no requirement that the harm will be carried out.

> Second, that the defendant communicated the threat to:  . . . commit any crime of violence, specifically [crime of violence], with intent to terrorize another.

Pa. SSJI (Crim), § 15.2706.

dragged Rossiter to the floor, at which time her head hit a metal railing. *Id.* at 53. Koch proceeded to kick Rossiter in the side and hit her "over and over," mostly in her face. *Id.* at 52. The violent acts accompanying Koch's threat were sufficient to allow a jury to find, beyond a reasonable doubt, that Koch possessed the intent to terrorize Rossiter and that his words constituted more than a "spur-of-the-moment" threat resulting from transitory anger. Accordingly, Koch is entitled to no relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/20